## DE SOTO MOTOR CORPORATION v. VANN.

### No. 799.

Circuit Court of Appeals, Tenth Circuit.

Aug. 12, 1933.

Rehearing Denied Sept 23, 1933.

Geo. S. Downer, of Albuquerque, N. M., for appellant.

Francis E. Wood, of Albuquerque, N. M. (Owen N. Marron, of Albuquerque, N. M., on the brief), for appellee.

754

Before LEWIS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

LEWIS, Circuit Judge.

The appellee recovered judgment against appellant on account of personal injuries received by her in an automobile wreck, caused, she alleged, by one Briggs, appellant's agent, who negligently managed and drove the automobile. Two other persons in the car with Briggs and appellee died from the injuries which they received. Actions for damages on account of their deaths were reviewed by this court in De Soto Motor Corp. v. Stewart, 62 F.(2d) 914. Appellant now brings here the judgment recovered by Sue Vann for the injuries which she suffered in the same wreck.

The car in which the four persons were riding belonged to appellant. It was in the possession of Briggs as appellant's agent. Mr. Clough, stationed at Denver, was district manager for appellant in Wyoming, Colorado and New Mexico. Clough had charge of all the dealers handling appellant's cars in the three states named. The selling of appellant's cars in that territory was under the direction of Clough. At the time of the accident Briggs had been assigned to New Mexico to visit the different agencies there where its cars were being sold, to advise with them and assist them. Briggs and other like agents were furnished a new car from time to time in which to go from place to place in discharge of their duties, and they were under instructions to sell the car before it had traveled 5,000 miles. The way in which Briggs was to find a purchaser for the car furnished to him was left to his discretion. The price which he was to get was fixed by Mr. Clough. Briggs had authority to look for a purchaser at any time after he took the car out. He could sell the car as an ordinary automobile dealer sells cars. Mr. Clough met Briggs at Las Vegas and went with him from there to Santa Fé and Albuquerque. When he left Briggs, Clough gave sufficient routing to Briggs to occupy Briggs' time until he should be furnished with further instructions. Clough then went to Detroit. Briggs was to do what he could to further the company's business at the places to which he was sent.

While Clough was in Detroit it was decided to hold a conference of all the company's representatives in the three states at Denver, and Clough wired Briggs to return to Denver for that conference. Briggs had not completed his duties in New Mexico. He left Gallup after dinner on June 15, 1930, in the car for Albuquerque, where he expected to leave it, if he did not sell it, and take the train to Denver for the purpose of attending the conference. Briggs, while at Gallup, tried to interest Charles Epperson in the purchase of the car he was using. He had talked with Epperson on more than one occasion and had shown the car to him, and apparently he thought Epperson was a prospective purchaser. Briggs asked Epperson to accompany him in the car from Gallup to Albuquerque. Mrs. Epperson had gone to California, but appellee, her sister, was at the Epperson home in Gallup, and when Briggs asked Epperson to go he replied that he could not leave Mrs. Vann alone. Thereupon Briggs invited Mrs. Vann to go also, saying to her, according to her testimony:

"You must come and go along, if you don't Mr. Epperson will not go, and he is interested in this car, and I am going to sell it, and let him come home in it from Albuquerque. If you don't go Mr. Epperson will not go either."

Mrs. Vann then consented to go. She further testified without contradiction that Epperson was invited on the trip by Briggs for the purpose of further demonstrating the car with a view to a sale. Prior to Mrs. Vann's decision to go Mr. Briggs had invited Mr. Stewart of Gallup to ride with him to Albuquerque. At that time he did not know that Mr. Epperson and Mrs. Vann would go.

The four persons named left Gallup at 11:00 o'clock at night. When they started the party was seated in the car thus: Mr. Briggs and Mrs. Vann on the front seat, and Mr. Epperson and Mr. Stewart on the rear seat. Mr. Briggs drove the car from Gallup to Grants, a distance of approximately sixty-five miles. They arrived at Grants about 1:00 A. M. and stopped to attend a dance there. An hour or so later the party left Grants for Albuquerque. The car left the highway at a sharp curve about fifty-four miles from Grants at 3:45 A. M., June 16th. The evidence indicates it was traveling at a high rate of speed.

Mrs. Vann testified that Briggs was driving the car when the accident occurred, that she was sitting by him on his right, that the four persons were seated in the car just as they were when they left Gallup, and that no change in that respect had been made prior to the accident. Mrs. Whitesides re-

sided in the town of Grants. She was acquainted with Mrs. Vann, Mr. Epperson and Mr. Stewart. She testified she saw them at the dance with Mr. Briggs, and talked with Mrs. Vann, that she saw the party in the car as they left Grants, that Mr. Briggs was then driving the car, that he had his coat off, that Mrs. Vann sat by him on the front seat, and that Mr. Stewart and Mr. Epperson were in the back seat, and they had their coats on.

Mr. Briggs, whose testimony was obtained by deposition, testified that he was not driving the car after it left Grants, that Mr. Epperson took the wheel at Grants and after that Epperson was at the wheel all the time, that Stewart and Epperson took the front seats at Grants and he and Mrs. Vann the rear, and they were seated that way when the accident occurred. He said he could not remember a single thing that occurred after they left Grants until after the accident, that the doctors might explain that from his head injury.

Mr. Witte, his wife, and his brother and his wife, were the first to arrive at the scene of the accident. He and Mrs. Witte had been to Albuquerque to meet his brother and his wife, who came from Detroit to make them a visit. On returning home they came upon the scene about twenty minutes after 4:00 o'clock A. M. They saw the wrecked car at the side of the road, stopped, and discovered the four persons that had been thrown from the car lying on the ground, each of them severely injured and in great pain. The wrecked car was about twenty-five to thirty feet from the road. It had left the road at the curve. Mr. Witte said it looked as if it had turned over two or three times. Most of its top had been torn off. He gave this description of what they found:

"Mrs. Vann's body was badly twisted and her clothing practically torn off. Mr. Briggs was lying on the ground on his side with his knees over Mrs. Vann's neck and head, pressing her face down into the dirt. Mr. Stewart was about twenty-five feet farther than Mrs. Vann and Mr. Briggs and was lying on his left side. * * * Mr. Epperson was about twenty-five feet from the car, but in a little different angle than Mrs. Vann and Mr. Briggs. There was no indication on the ground that Mr. Stewart had moved from where he struck. It appeared he had traveled all the distance in the air. * * *

"When we picked Mrs. Vann up the front cushion of the car was about six feet from her and Mr. Briggs. We removed the rear cushion of the car, placed it along the side of the front cushion and put Mrs. Vann on it. * * * The front cushion was a little bit farther away from the car than Mrs. Vann and Mr. Briggs, but in the same direction from the car. * * * Inside the wrecked car we found one of Mrs. Vann's shoes in the front compartment, directly in front of the driver's seat. We also found Mrs. Vann's hat in the car. * * * Her other shoe was found on the ground to the right of the front right wheel. * * *

"We asked Mr. Epperson if he was driving the car. He said he was. We questioned Mr. Epperson about the car and other things but he did not retain a conscious state. He was in severe pain all the time. * * * We talked to Mr. Briggs but he had little to say. But, sometimes in our conversation with Mr. Epperson, Mr. Briggs seemed to follow us and would kind of half answer for Mr. Epperson. We asked Mr. Briggs if he was driving the car and he said, 'No—I was driving alone.' I asked him, 'Who is this lady lying here by you?' He said, 'I don't know, if there is a lady here it is news to me.' I asked him who the other people were and he seemed to drop out and did not answer. We asked Mr. Epperson who the lady was but he did not know. I asked him who was the heavy man lying away from the car, but he did not answer and it seemed like he could not answer, or could not get his faculties together to answer. * * * I asked Epperson who the lady was that was in the party. He tried to answer but did not make any answer and it seemed to me he did not know who she was. He did try to make a sign, but a direct answer did not come, or words would not seem to form. In questioning Mr. Briggs, he did not know who the lady was and did not know Jack Stewart. * * * The only information given by Mrs. Vann was the answer 'yes' to the question put to her whether or not she was Sue Vann. She moaned most of the time because she was in severe pain also. From my observation and hearing him talk, I don't believe Mr. Epperson understood what was going on. He was in terrible shape physically and his pain must have been something awful but as far as his mental condition, it seemed he tried to make connection with us, and as to any talking it seemed he could not retain it. The mental effort did not follow along. * * *

"At the time we found Mr. Epperson he was lying on his face, or stomach. His head was toward the road and his face turned to the left. His legs were spread out behind him in the circle I have described, and between his legs was the Gladstone bag. * * * The front cushion was originally found about six feet from the position of Mr. Briggs and Mrs. Vann. It was somewhat back of Mr. Briggs and Mrs. Vann—about two feet back and closer to the car. It was only moved a foot or two. * * * We found Mr. Briggs' coat under the left rear wheel of the car. Mr. Epperson and Mr. Stewart both had their coats on, and Mr. Briggs was in his shirt sleeves, his shirt being badly torn."

Some luggage, including the Gladstone case which belonged to Mr. Briggs, had been put in the car on the floor in front of the rear seat. Mr. Witte further testified:

"We found this case between Mr. Epperson's limbs. The case weighed about fifty pounds and it looked as though it had been placed between Mr. Epperson's limbs."

Mr. Witte also testified that Mr. Stewart never regained consciousness. He further testified that the question as to who was driving the car was put to Mr. Briggs three times and that he made three separate answers: "No, he was driving alone." "No, he was traveling alone." "No." When we asked Briggs if he knew there had been an accident and the car smashed up, he answered: "I don't know anything about an accident." Mr. Witte further testified that about twenty minutes before the ambulance came Briggs said he was all right and wanted to get to his feet. Witte told him he was seriously hurt and he would not put him on his feet but would let him sit up and see how he felt. Briggs braced himself against Witte's knees, and after a moment he said he was sick. He then laid Briggs down, and he went into unconsciousness. He never regained consciousness while he was there.

Epperson died at the hospital at Albuquerque within less than twenty-four hours after the accident. One witness testified that Epperson while in the hospital said that he was driving the car at the time of the accident, but Epperson's condition was shown to be such as to cause serious doubt whether he knew what he was saying.

■ It thus appears that evidence on the issue as to who was driving the car at the time of the accident is in conflict. Mrs. Vann testified that Briggs was driving. She is partially corroborated by Mrs. Whitesides, and the circumstances surrounding the accident as described by Mr. Witte afford ground for inferences on that point. Mr. Briggs denied that he was driving the car. We have set out the facts rather fully. Appellant insists that there was no substantial evidence that Mr. Briggs was driving the car and the court should have instructed the jury on that ground to render a verdict in favor of appellant. The contention is obviously devoid of merit. Clearly the proof in that respect presented an issue of fact for the jury's determination.

Also the proof puts beyond question the charge that the car was being negligently driven at the time it left the highway. There was a "slow" sign marked with a red reflector at the curve, which the driver could have seen, had he been attentive, and there was testimony that the car was moving at a high rate of speed when it left the road.

■ Another point to which appellant's counsel devoted much of his argument is based upon correspondence by mail between Mrs. Vann and Mr. Briggs after the accident. It was initiated by Mrs. Vann fifteen months after the accident and carried on with the knowledge of her counsel. Mrs. Vann was in New Mexico and Mr. Briggs in Denver during this correspondence. They were strangers before they met at Gallup, New Mexico, a few days before the accident. The correspondence on both sides was of friendly tone at first, but later there were expressions of affectionate regard. Mrs. Vann frequently referred to the pendency of this case, that it would come on for trial, and that she hoped and believed that Mr. Briggs was her friend. It was clearly suggestive of her desire that he would not testify against her interests but there was no request that he testify contrary to the truth or evade giving testimony. There was no promise or intimation by him as to what he would testify to, if called as a witness. In the deposition he testified without hesitation that he was not driving the car at the time of the accident, that Mr. Epperson was driving it, and he repeated that statement. On that subject the court gave this request of appellant in its instructions to the jury:

"If you believe that any witness has attempted to suborn or tamper with the testimony of any other witness in this case or has attempted to procure or induce such witness to fail or refuse to testify to any material facts, you may consider such circumstances as bearing on the credibility of the

witness whom you find has done any of these things."

It is true that the first time defendant tried to take the deposition of Briggs he got into a heated controversy with defendant's counsel on the assigned charge that said counsel had stated that he, Briggs, was intoxicated at the time of the accident, and that said counsel had not answered Briggs' letter inquiring whether counsel had made such charge. Briggs' language was unreasonable and intemperate. He first said he would not testify until defendant's counsel answered that inquiry, but on the same occasion he later retracted that assertion and said he was ready to answer any questions that should be asked him, but defendant's counsel then refused to interrogate him. Later he gave the deposition in behalf of defendant in which he testified he was not driving the car, that Epperson was driving it when the accident occurred, and that was offered by the defendant at the trial. His testimony covers four and a half pages of the record, is direct, without equivocation and all in favor of appellant. Defendant requested another instruction on that subject to the effect that, if there had been collusion between appellee and Briggs with a view towards establishing her case or refusal to testify or by suppressing facts, the verdict should be for defendant. This was refused and error is assigned. We cannot agree that the court erred. There were expressions of anxiety in Mrs. Vann's letter to Briggs when she heard his deposition was to be taken, she said she thought she could rely on a friend but the result would tell. His letters were all less definite in reference to the case. The nearest approach was he wished her the best of luck and would pull for her, and that he would be glad to know how it all came out. The most inappropriate letter, in substance and origin, was that of her counsel to Briggs after the trial of the Stewart and Epperson cases. It purported to give an account of what occurred at those trials. That letter seems to have been the basis of the report that defendant's counsel had accused Briggs of being drunk at the time of the accident.

We think the court's instructions fairly covered each of the contested issues of fact. They carefully safeguarded the rights of the defendant in all respects of which complaint is now made.

As to liability to Mrs. Vann, the court told the jury that, if they should find that Briggs was trying to sell the car to Epperson, and should further find that he invited Epperson to go on the trip to Albuquerque for the purpose of demonstrating and selling the car to Epperson, and invited Mrs. Vann to go, and in so doing it was to help sell the car to Epperson and promote the business of defendant, then the defendant owed to both Epperson and Mrs. Vann the duty not to cause them injury by reason of Briggs' negligence; that in order to find for the plaintiff they must find that Briggs took Mrs. Vann along because Epperson would not go unless his sister-in-law went.

Finding no error in the trial proceedings, the judgment appealed from is affirmed.