386 P.2d 46

James D. LANDERS, Plaintiff-Appellee,

v.

ATCHISON, TOPEKA & SANTA FE RAIL-
WAY COMPANY, M. C. Beene, J. L. Jones,
J. L. Westover, W. M. Holder and H. A.
Haragan, Defendants-Appellants,

Fireman's Fund Indemnity Company and
State Automobile and Casualty Under-
writers, Plaintiffs-in-Intervention.

No. 7031.

Supreme Court of New Mexico.

Sept. 9, 1963.

Rehearing Denied Nov. 5, 1963.

B. G. Johnson, J. T. Paulantis, R. G. Cooper, Albuquerque, for appellants.

Brown & Brainerd, Atwood & Malone, Roswell, for plaintiffs-in-intervention.

Harris & Cathey, Roswell, Harvey C. Markley, Lovington, for appellee.

**JAMES M. SCARBOROUGH, District Judge.**

Upon the first trial of this case, the jury returned a verdict in favor of the plaintiff. An appeal to this court resulted in a reversal and remand for retrial. Landers v. Atchison, Topeka & Santa Fe Railway Co., 68 N.M. 130, 359 P.2d 522. The second trial also resulted in a verdict for the plaintiff and the case is here on appeal for the second time.

A statement of the issues and a brief review of the evidence will put the case in focus.

Plaintiff charged the defendant railway company and its several agents involved in the affair, with negligence and with failure to exercise the last clear chance and with thereby directly and proximately causing the collision between the tractor-trailer operated by the plaintiff and a locomotive of the defendant railroad.

The defendants denied negligence on their part and denied that they had the last clear chance and affirmatively alleged that plaintiff was guilty of contributory negligence but for which the accident would not have occurred and that the plaintiff had the last clear chance.

There was substantial evidence from which the jury properly could find that the plaintiff approached the intersection of McGaffey Street in Roswell with the railroad tracks at a very slow speed; that plaintiff stopped his truck within about 10 or 12 feet from the nearest rail, looked south, north, south again (along the railway right of way) and, neither seeing nor hearing an approaching locomotive, put his truck in low gear and proceeded toward and onto the railroad tracks at a speed of 3 or 4 miles per hour; that the crossing signal bell and lights were not working; that one of the five engine crewmen saw the truck when the engine was about 200 feet distant from the intersection but that he did not give any warning to the fireman, who was then operating the engine from the side opposite that from which the truck was approaching; that, although their view was unobstructed, no other one of the crewmen occupying the

locomotive saw the tractor-trailer until the collision was imminent; that the locomotive was being operated backward (rear end first) at a speed of 30 miles per hour; that no warning was given by the crossing signal lights or bell; that no whistle or bell signal was given by the locomotive until a matter of a few seconds before the locomotive crashed into the tractor, striking it at a point near the door; that upon his hearing the belated blast of the engine whistle, the plaintiff opened the tractor door on the driver's side, undertook to leap from the tractor but was unable to do so in time to avoid being involved in the crash, so closed the door and threw his body prone in the cab; that the engine did not slacken its speed nor was emergency braking applied prior to impact; that the plaintiff suffered serious and permanent injuries in the accident.

Appellants Railway Company and crewmen assign six errors. In the first two, they assert that the trial court, while submitting plaintiff's theories to the jury, failed and refused to submit defendant's theories.

Defendant's theories were adequately and properly outlined in the court's statement of the case. The law applicable to the duties of both plaintiff and defendants under all the circumstances revealed by the evidence was correctly and fully given to the jury. Each of the court's instructions Nos. 5, 7, 11, 12, 14, 16, 17, 24, 26, 28, 29, 30, 31, 33 and 35 related either in part or entirely to one or the other of defendant's theories.

No instruction on last clear chance, from defendant's point of view, was tendered by defendants. The court's instruction on last clear chance, however, did end with this sentence, "These same rules apply insofar as defendant's defense of last clear chance is concerned." Defendants must have been satisfied with the court's exposition of the law on the last clear chance doctrine. Our examination of the instruction reveals that it was a clear, accurate and complete statement of the law on the doctrine insofar as it was asserted and relied on by the plaintiff. Whether the last clear chance doctrine was properly available to the defendants as an affirmative defense, we do not feel called upon to decide. But assuming that it was, no error is revealed by the record, defendants not having submitted a last clear chance instruction on their own behalf and not having made any objection to the instruction given by the court, except that no last clear chance instruction should have been given in explanation of plaintiff's allegation and theory, which matter will be discussed later in this opinion. Section 21–1–1(51) (g), N.M.S.A., 1953 Anno.; State v. Smith, 51 N.M. 328, 184 P.2d 301; State v. Compton, 57 N.M. 227, 257 P.2d 915; Gerrard v. Harvey & Newman Drilling Co., 59 N.M. 262, 282 P.2d 1105.

But, assert the defendants, their theories of the case should have been submitted to

the jury by inclusion in the court's charge of their tendered instructions Nos. 3, 5, 10, 11 and 12.

■ Defendant's submitted instruction No. 3 was as follows:

"You are instructed that the train crew was under no duty to notify Beene, the operator of the engine, that plaintiff Landers was approaching the crossing until such time as it became apparent that Landers was not going to stop and that a collision was imminent."

The instruction is not a correct statement of the law. It is incomplete. It should contain proper reference not only to what "became apparent" but to *what should have become apparent to a reasonable person under the same or similar circumstances.* Without such a modifying provision, the instruction would be fatally prejudicial to plaintiff.

■ As phrased, instruction No. 3 would excuse any and all manners of negligence on the part of the engine crewmen which in fact may have resulted in their never having looked, not having seen, or in their having failed reasonably to appraise the situation. It does not conform to the universal rule that the standard of care required in a tort action is that to be expected of a reasonably prudent person. Denney v. United States (10th Cir. 1950), 185 F.2d 108; Saindon v. Lucero (10th Cir. 1951), 187 F.2d 345; Lujan v. McCuistion,

55 N.M. 275, 232 P.2d 478; Le Doux v. Martinez, 57 N.M. 86, 254 P.2d 685; Reif v. Morrison, 44 N.M. 201, 100 P.2d 229.

Although it contains no reference to the duty of the crewmen to warn the operator Beene, the court's instruction No. 29 adequately instructs the jury concerning this particular aspect of the case.

■ Refusal to give defendant's requested instruction was not error where the court otherwise correctly instructed on the point of law involved. Frei v. Brownlee, 56 N.M. 677, 248 P.2d 671.

Defendant's submitted instruction No. 5 was as follows:

"You are instructed that the Atchison, Topeka & Santa Fe Railway Company was under no duty to provide special equipment on the diesel engine for crew members therein to communicate between themselves."

■ No issue was raised by the pleadings or the proof relative to the duty of the Railway Company to install and maintain communication equipment in its locomotive to facilitate communications between and among the crewmen. To have instructed on this matter would have injected a false issue into the case, would likely have misled and confused the jury, and would have been error. De Soto Motor Corporation v. Vann (10th Cir. 1933), 66 F.2d 753.

At one point some inquiry was made concerning the means and manner by which the crewmen communicated with each other, and the answers indicated that they talked or shouted to each other. Objection was made but no error predicated upon the overruling of the objection. The evidence was slight in amount and could hardly have been impressive in impact. It certainly did not call for the giving of defendant's instruction No. 5.

Defendant's submitted instruction No. 10 is as follows:

"You are instructed that a traveler on a highway or street, upon approaching a railroad crossing, must not only look from a point which will enable him to see, but must continue to look and listen until the point of danger is passed. If you find from the evidence that the plaintiff stated he looked and did not see the engine, which in the nature of things he must have seen if he did look, then this testimony must be disregarded and cannot be evidence that he did perform his duty to look."

█ █ Defendants undertake to support the propriety of this instruction by the citation of Morehead v. Atchison, Topeka & Santa Fe Ry. Co., 27 N.M. 349, 201 P. 1048. But the Morehead case involved an open crossing and not a guarded crossing (where electrically-operated signals are in place) such as the one here involved. The duty of a traveler to exercise care at a guarded crossing differs from that required at an unguarded one, and the language of Morehead is not appropriate under the facts of the instant case. Landers v. Atchison, Topeka & Santa Fe Railway Co., supra.

Defendant's submitted as their instruction No. 11:

"There is no law in this state which requires that a train be operated at such a speed that it can stop if a motor vehicle appears suddenly in front of it at a grade crossing."

█ Defendant's assignment of error resulting from the court's refusal to give this instruction can be disposed of by the observation that there was not one scintilla of evidence in the record that plaintiff's motor vehicle *appeared suddenly* in front of the train. The entire, uncontradicted evidence is to the contrary. The instruction was properly rejected by the trial judge. See Terry v. Biswell, 66 N.M. 201, 345 P.2d 217.

The refusal of defendant's tendered instruction No. 12 was not error. The court fully instructed on the question by other instructions.

Defendants insist, in their third assignment of error, that the court should have dismissed from the case plaintiff's "claim" of gross negligence on the part of defendants and should not have instructed thereon.

■ The claimed error of the court's instructing on gross negligence is based upon the inclusion in the court's statement of the case of the words "wantonly and wilfully" as descriptive of the alleged negligent acts of defendants. These words were used in the plaintiff's complaint and were doubtless copied from the complaint into the statement of the case. This does not amount to instructing the jury on gross negligence. Plaintiff tendered three instructions on gross negligence, plaintiff's Nos. 1, 2 and 3. All were refused by the trial judge. No other instruction on gross negligence was given.

The statement of the case included in the instructions clearly identified plaintiff's claims and allegations as such. The jury could not conceivably have attached any significance to the use of the words "wantonly and wilfully" in plaintiff's description of the negligent acts with which he charged the defendants.

Defendants assign as Point IV:

"There was insufficient substantial evidence to support the issue and doctrine of Last Clear Chance."

Under this assignment, defendants urge that the court erred in failing to dismiss as to the last clear chance doctrine upon defendant's motions timely made and, as a corollary, that the court should not have instructed concerning this part of plaintiff's theory of the case.

■ Defendants devote 37 pages of their brief in chief to the argument of this assignment, their major complaint on appeal. They quote extensively from the evidence and reason from the portions quoted that the last clear chance doctrine was not made applicable to this case by the evidence introduced on the trial.

It would serve no useful purpose to discuss the evidence in detail. Suffice it to say that a careful review of the record convinces us that the evidence was sufficient to warrant an instruction on last clear chance.

On the applicability of the last clear chance doctrine, see Tiedebohl v. Springer, 55 N.M. 295, 232 P.2d 694; Sanchez v. Gomez, 57 N.M. 383, 259 P.2d 346; Davis v. Jones, 60 N.M. 470, 292 P.2d 773; McMinn v. Thompson, 61 N.M. 387, 301 P.2d 326. See 70 A.L.R.2d 16 on the applicability of the doctrine to railroad crossing cases. See also Witter v. Henry, 4 Cir., 181 F.2d 10; Bray v. St. Louis-San Francisco Ry. Co., (Mo.App.), 236 S.W.2d 758; Craig v. Boston, etc., Ry. Co., 92 N.H. 408, 32 A.2d 316.

The issue was properly presented to the jury by an appropriate instruction which correctly stated the law.

Defendants complain of the court's refusal to submit their tendered interrogatories.

■ The submission of special interrogatories is a matter which lies largely

in the discretion of the trial judge. The proper purpose of submitting interrogatories is to aid the jury, not to cross-examine it. Morris v. Pennsylvania R. Co. (2d Cir. 1951), 187 F.2d 837. And see Larsen v. Bliss, 43 N.M. 265, 91 P.2d 811 and Madsen v. Read, 58 N.M. 567, 273 P.2d 845.

To economize on space, we will not set out the four interrogatories submitted; but we will observe that had either set of two interrogatories, submitted alternatively, been given and had the jury answered both in the manner favorable to defendant, the verdict which the jury returned would not have been impeached and no change in ultimate result would have been produced.

An affirmative answer to the tendered interrogatory No. 1 would have done no more than reveal that the jury found the plaintiff negligent in failing to see the approaching engine and in proceeding into its pathway. This would have had no effect whatever on the plaintiff's entitlement to a recovery and the defendant's liability under the last clear chance doctrine. Substantially the same thing may be said with respect to submitted interrogatory No. 2. The court did not err in refusing to submit the interrogatories to the jury.

Lastly, defendants complain that there was not sufficient substantial evidence to justify the submission of the issue of excessive speed of the locomotive to the jury. They cite and rely on Sandoval v. Atchison, T. & S. F. Ry. Co., 30 N.M. 343, 233 P. 840 and Atchison, T. & S. F. Ry. Co. v. Herbold (10th Cir. 1948), 169 F.2d 12, which are distinguishable on their facts from the case at bar. In the Sandoval case, the train was approaching an unguarded crossing in a rural area at a speed of thirty miles per hour. The speed of the train was fixed by the plaintiff from his observation prior to the collision; plaintiff obviously saw the train, got a good look at it. And the plaintiff ran his car into the baggage car, the locomotive and tender having already passed the crossing. Obviously, the speed of the train was not an issue.

But here the engine was being operated through the city of Roswell, approaching an urban intersection at a speed of 30 miles per hour; the fireman who was actually operating the engine was on the side opposite that from which the truck approached; his view ahead was obstructed by the operation of the locomotive in reverse; the crossing signals were not operating and had been out of operation for several days, according to plaintiff's witnesses; there is a strong inference that at least some of the crewmen were not keeping a proper lookout as they approached the crossing; no audible warning was sounded by the locomotive until scant seconds before the collision. Can it be said under such circumstances that speed is not an issue? We think not.

Moreover, the only instructions which referred to the speed of the locomotive were the court's statement of the case and instruction No. 30. The former merely recited in condensed form the allegations of the complaint including that to the effect that "the train was being operated at a dangerously excessive and unlawful rate of speed." We have already discussed the statement of the case.

Instruction No. 30 stated that "there is no law that regulates the speed" of railroad trains except the basic principle "that it shall exercise ordinary care, and therefore any speed consistent with such care is lawful and proper." There is no error here.

Two or three other matters are referred to and briefly argued in defendant's brief; but they were not noted in the assignments of error. We are not obliged to consider them but we did consider them and found them to be without merit.

Our examination of the six volumes of the record and of the briefs satisfies us that the trial was conducted in a manner free of substantial error, that the jury was properly charged, that the verdict of the jury and the judgment of the court thereon should be affirmed.

It is so ordered.

COMPTON, C. J., and NOBLE, J., concur.