499 F.2d 767
 Jose LOPEZ and First National Bank in Albuquerque,
Co-Administrators and Personal Representatives of
the Estates of Cecilia Cardiel de Lopez,
et al., Plaintiff-Appellees,
v.
SOUTHERN PACIFIC COMPANY, a corporation,
Defendant-Appellant, Third Party Plaintiff, v. The
CITY OF ALAMOGORDO, NEW MEXICO, Third
Party Defendant-Appellee.
 No. 73-1675.
 United States Court of Appeals, Tenth Circuit.
 Argued March 21, 1974.
Decided July 1, 1974, Rehearing Denied July 25, 1974.
 
 W. B. Kelly, Santa Fe, N.M., for defendant-appellant, third party plaintiff.
 Richard E. Ransom, Albuquerque, N.M., for plaintiffs-appellees.
 Edward E. Triviz, Las Cruces, N.M., for third party defendant-appellee.
 Before HILL and DOYLE, Circuit Judges, and DURFEE,[1] Judge.
 HILL, Circuit Judge.
 
 
 1
 In this diversity action Southern Pacific Transportation Company appeals a $150,000 jury verdict awarded appellees for the wrongful deaths of three members of the Domingo Lopez family. Appellant also challenges the trial court's dismissal of the City of Alamogordo, New Mexico, as a third party defendant.
 
 
 2
 Pertinent facts leading up to this appeal include the following. The Domingo Lopez family lived in a residential area outside the city limits of Alamogordo, New Mexico. Their main access to the City was Canal Street crossing, a railroad crossing using standard city stop signs and standard railroad crossbucks to warn motorists of approaching trains. On the evening of May 3, 1972, Domingo, his wife Cecilia, and two of their ten minor children were on their way to Alamogordo when their pickup truck collided with a Southern Pacific freight train at the Canal Street crossing. All four members were killed instantly.
 
 
 3
 Appellees, as personal representatives for the benefit of the eight surviving Lopez children, brought this action in the United States District Court for New Mexico to recover for alleged acts or omissions of negligence on the part of appellant. Their complaint in essence stated that appellant failed to adequately warn motorists of approaching trains. Specifically, appellant failed to construct and maintain a reasonably safe crossing; failed to exercise reasonable care in the operation of its equipment; failed to install and maintain adequate warning signs or signals; and failed to maintain proper control of its train. Appellant denied any negligence and filed a third-party complaint against the City of Alamogordo, alleging that the injuries were proximately caused by the willful negligence of third-party defendant, including failure to construct and maintain a reasonably safe crossing and approach; failure to install and maintain adequate warning signs and signals; and knowingly maintaining extra hazardous conditions at an unusually dangerous crossing. Appellant also alleged the City of Alamogordo should provide one-half contribution for any verdict rendered against the railroad.
 
 
 4
 At trial appellees' evidence included the following. Mrs. Greenwood, the only eyewitness to the accident, testified that she was driving along Canal Street shortly after 8:00 o'clock in the evening of May 3, 1972; it was then dusk but not dark. Upon approaching the Canal Street crossing she pulled up to the crossing and stopped with the front end of her car a little past the stop sign. She then started to go on but saw the train approaching and stopped again. She testified that she first saw the train when the front end of the engine was less than 100 yards from the crossing. Mrs. Greenwood did not hear any whistle until about the time she saw the train and even then the whistle was only a short blast. The front windows on the driver's side and the passenger's side of her station wagon were open. She did not have a radio in her car which might have obstructed her hearing. Mrs. Greenwood further testified the Lopez truck, which was approaching the crossing from the opposite direction, was near the railroad tracks by the time the train whistle was blown.
 
 
 5
 Policeman Jerry Lilley, a patrolman for the Department of Public Safety, City of Alamogordo, investigated the accident and found that Domingo's truck had left 24 feet 9 inches of tire marks to a point six inches over the west rail. Although it cannot be determined from the skid marks how fast Domingo was going, other testimony indicated he was approaching the tracks within the speed limit of 25 miles per hour. Domingo did, however, drive right onto the railroad tracks.
 
 
 6
 The train brakeman, Morris Crump, stated that he first saw the pickup when it was over a block from the crossing. Crump does not remember taking his eyes off the pickup after he first saw it, and admits that he was concerned about the approaching truck's failure to stop because so many vehicles try to beat a train through crossings. Nevertheless, Crump did not make any statement to the engineer about the approaching pickup truck. He further testified that nothing the Lopez truck did or any actions of its occupants indicated they knew the train was there.
 
 
 7
 Certain facts not in dispute were presented to the jury. These include: (1) that rules and regulations of the Transportation Department of the Southern Pacific Transportation Company require a train's whistle be sounded continuously a quarter mile from a public crossing until the train crosses the public roadway; (2) the collision between the front end of the locomotive and the truck occurred at approximately 8:05 to 8:10 p.m., sunset having been at approximately 7:45 to 7:49 p.m.; (3) the City of Alamogordo had installed stop signs on each side of the railroad crossing on Canal Street, these stop signs were in place at the time of the accident and installed in accordance with the agreement of easement with the Southern Pacific Transportation Company.
 
 
 8
 With regard to the Canal Street crossing, the evidence indicated that in 1969 Alamogordo widened the grade crossing. At that time appellant inquired of the City for an approximate daily vehicular traffic count and whether automatic protection had been considered. The City replied that an eleven hour traffic count from 8:30 a.m. to 7:30 p.m. reflected 824 motor vehicles using the crossing and also stated that automatic protection was not desired. Appellant then granted the City an easement upon the condition that the City install and maintain stop signs at the crossing.
 
 
 9
 Professor Baerwald testified as an expert on traffic safety. When asked his opinion as to the reasonableness of the protection devices at the Canal Street crossing he replied that more was needed than passive devices such as stop signs and crossbucks. He pointed out these passive devices only told the motorist of the existence of the crossing and failed to tell the motorist of the proximity of any oncoming train. In arriving at this conclusion Baerwald determined that based upon the number of automobiles using the Canal Street crossing and the number of trains running across Canal Street every day the exposure factor was almost twice the value used for considering the employment of flashing lights. Baerwald also pointed out that due to sharp curves in the road and potential conflicts with vehicles entering Canal Street from side roads, a vehicle approaching the crossing is faced with intermittent interruptions along the roadway. He further stated that in his opinion railroad grade crossings are ineffective as a protective device. Another hazard at the Canal Street crossing, Baerwald testified, are the night lights along White Sands Boulevard, a street paralleling the tracks. It was Baerwald's opinion that as the lights were turned on along White Sands Boulevard it became increasingly difficult for motorists to distinguish train lights from boulevard lights.
 
 
 10
 Concerning the lighting condition on the evening of May 3, several other witnesses stated that lights were on along White Sands Boulevard when the accident occurred.
 
 
 11
 Appellant's first defense witness, Hattie Shirley, testified that she lived within several blocks of Canal Street crossing and that she heard the train whistle as it passed her home on the evening of May 3. Mrs. Shirley stated the whistle was a long, continuous blast. John Crain, Mrs. Shirley's nephew who was visiting the Shirleys at the time of the accident, testified the train did whistle as it passed the Shirley house but the whistle was only a short blast. Carlene Moten, who also lives near Canal Street crossing, said the train blew its whistle while approaching the crossing. Ethel Adams, who was visiting Mrs. Moten, testified the train was making a continuous whistle and had its light on while nearing the crossing.
 
 
 12
 Vernon G. Donlin, retired railroad manager for the New Mexico State Highway Department, testified that in 1971 the state took a count of all railroad crossings in New Mexico. From this survey it was found that New Mexico had 772 crossings: 29 were protected by gates; 106 were protected by flashing lights or cantilever lights; 15 were protected by stop signs; 527 were protected by crossbucks; and 95 had no protection. Donlin further stated that according to his method of determining safety at railroad crossings the Canal Street crossing was adequately protected with the stop signs and crossbucks.
 
 
 13
 Jack V. Butchofsky, train engineer, testified that he was traveling about 45 miles per hour upon approaching the Canal Street crossing and was blowing the whistle continuously. He had said at the time of the accident however that he was traveling about 60 miles per hour. He stated the pickup truck was traveling slow enough that it could have stopped at any time.
 
 
 14
 After both sides rested, the City of Alamogordo's motion for a directed verdict was granted on grounds the City did not have the same responsibility as appellant for making the crossing safe. Appellant's motion for a directed verdict with respect to Domingo Lopez was also granted since Domingo failed to stop at the stop sign, which constituted contributory negligence as a matter of law. With respect to the three passengers in the truck, the jury was instructed that damages were permissible if the passengers were not guilty of contributory negligence and appellant's negligence was a proximate cause of the accident. The jury returned a verdict in favor of appellees in the sum of $100,000 for the wrongful death of Cecilia Lopez and $25,000 each for the wrongful deaths of the two minor children.
 
 
 15
 Appellant's first argument on appeal is that appellees have failed to present substantial evidence showing that negligence by Southern Pacific proximately caused the accident. Appellant strongly argues the sole proximate cause of the accident was failure of Domingo to stop at the railroad tracks. In determining this issue we will view the evidence, including all reasonable inferences, in the light most favorable to the prevailing party. Following this standard of review, we first note that Domingo was driving his truck within the speed limit of 25 miles per hour along Canal Street. The train brakeman observed the truck over a block from the crossing and although he was concerned it might not stop, he failed to notify the engineer of the potentially dangerous situation. The engineer was running the train at approximately 60 miles per hour yet he failed to blow the whistle until he was less than 100 yards from the crossing. Even then the whistle was merely a short blast, although Southern Pacific regulations require the whistle to be blown continuously once the train is within a quarter mile of a railroad crossing.
 
 
 16
 Other evidence indicated the Canal Street crossing was dangerous because there was insufficient protective devices warning motorists of approaching trains. Although stop signs and crossbucks were placed at the crossing, these were inadequate in view of the large volume of vehicles and trains using the crossing. The evidence suggested these passive devices did not sufficiently warn motorists, who were negotiating sharp curves and looking for traffic at intersections, that a train was approaching. Further evidence indicated a potentially dangerous situation existed from the fact that White Sands Boulevard paralleled the railroad tracks; at dusk train lights easily could be confused with boulevard lights. Although appellant could have at least partially remedied this dangerous situation by installing rotating lights on its trains it had failed to do so.
 
 
 17
 From the above recital it is clear there is sufficient evidence for the jury to reasonably determine that appellant was negligent in operating its train and/or negligent in failing to provide adequate protective devices at the crossing. We cannot say as a matter of law that Domingo's running of the stop sign was the sole proximate cause of the accident. New Mexico law states that the proximate cause of an injury 'need not be the last act, or the nearest act to the injury, but may be one which actually aided in producing the injury. Proximate cause need not be the sole cause, but it must be a concurring cause.' Kelly v. Montoya, 81 N.M. 591, 470 P.2d 563, 567 (1970). In New Mexico there can be more than one proximate cause and based upon the evidence the jury could reasonably determine that appellant's negligence was one of the proximate causes.
 
 
 18
 The jury was instructed that if it found the passengers contributorilynegligent in causing this accident the verdict must be for appellant. Contributory negligence is an affirmative defense which must be proved by the appellant. Absolutely no evidence was offered by appellant indicating that either minor child failed to exercise due care for her own safety; or failed to keep a proper lookout; or failed to stop, look and listen. With respect to Mrs. Lopez, the only evidence is that she had traveled Canal Street on numerous occasions and thus knew or should have known of the potentially dangerous crossing. Although a passenger who is aware of potential danger must take steps to avoid it, the passenger has no duty or obligation to keep a lookout on behalf of the driver and need only warn of imminent danger of which the passenger is aware and the driver unaware. See Trujillo v. Chavez,76 N.M. 703, 417 P.2d 893 (1966). As pointed out above, there is sufficient evidence that Mrs. Lopez was not aware of the impending danger. There were intermittent interruptions along Canal Street which could have diverted her attention. The approaching darkness reduced visibility and the lights on White Sands Boulevard may have hindered her vision of the approaching train. With respect to Domingo's running of the stop sign, there is no evidence that Mrs. Lopez should have foreseen this event. A daughter testified that Domingo always stopped at railroad crossings and looked both ways before proceeding. As Domingo approached the railroad tracks he was traveling at a speed which one witness testified was slow enough to have allowed stopping of the vehicle at any time. From the evidence the jury could reasonably infer that under the circumstances Mrs. Lopez had no reason to be aware of danger and therefore was not contributorily negligent. Even without these inferences, however, it is clear appellant failed to meet its burden of proving negligence on her part.
 
 
 19
 While appellant suggests the passengers committed contributory negligence as a matter of law there was sufficient evidence on this question to allow a jury to resolve the dispute. See DePadilla v. Atchison, T. & S.F. Ry. Co., 16 N.M. 576, 120 P. 724 (1911). The jury rejected appellant's affirmative defense and we are bound by their decision.
 
 
 20
 The second alleged basis for reversal is the trial court's refusal to give appellant's requested instruction on independent intervening cause. Appellant's contention is the independent intervening cause that clearly resulted in this accident was the undisputed negligence of Domingo in failing to stop at the Canal Street stop sign as required by New Mexico law. Unquestionably a party is entitled to an instruction based on his theory of the case if these is evidence in the record to support it. Clifton v. Mangum, 366 F.2d 250 (10th Cir. 1966). In New Mexico an independent intervening cause will prevent recovery if the act or omission of a wrongdoer (1) interrupts the natural sequence of events following from the first act or omission; (2) turns aside their cause; (3) prevents the natural and probable results of the original act or omission; and (4) produces a different result that could not have been reasonably foreseen. Thompson v. Anderman, 59 N.M. 400, 285 P.2d 507 (1955). Appellant failed, however, to present any evidence that Domingo's running of the stop sign produced a result that could not have been reasonably foreseen. The evidence showed that Southern Pacific knew a high percentage of motorists failed to stop at their railroad crossings. Brakeman Crump testified that he was concerned the Lopez truck might not stop before entering the crossing. No evidence was offered indicating Domingo's failure to stop produced a result that could not be reasonably foreseen to be a result of appellant's failure to provide adequate warning devices and/or failure to properly blow the train whistle. We therefore find no error in the trial court's refusal to instruct the jury on independent intervening cause.
 
 
 21
 Appellant's third argument is the trial court erred in submitting to the jury issues on the train's speed, failure to warn, proper lookout, and the adequacy of lights on the railroad engine. Appellant's position is there was no substantial evidence to support these issues. The trial court, as part of its instructions, stated the following:
 
 
 22
 The deaths which Plaintiffs claim were proximately caused by one or more of the following claimed acts or omissions of negligence: The train whistle was sounded unreasonable late to avoid the danger of a crossing collision; Engineer Butchofsky did not keep a proper lookout and brakeman Crump did not timely warn engineer Butchofsky of the approaching Lopez pickup truck; Engineer Butchofsky did not maintain proper control of the train's speed so as to avoid placing city residents in danger and so as to avoid an accident at the city grade crossing; The Southern Pacific did not operate its locomotive with adequate lights, including a moving headlight, to give motorists reasonable warning of the approach of a train;
 
 
 23
 . . . .id
 
 
 24
 There is no law that regulates the speed of a railroad train except the basic principle that it shall exercise ordinary care, and therefore any speed consistent with such care is lawful and proper.
 
 
 25
 With respect to the issue of speed, appellant argues that its train was within the 60 miles per hour speed limit. Hence, the court should not have allowed the train's speed to be an issue. In light of the circumstances surrounding this case, however, we disagree with appellant's contention. There is evidence suggesting the train was traveling 60 miles per hour as it approached a residential subdivision's only major access to the City. Because this access was used extensively by city-bound traffic, we believe it was proper for a jury to decide whether the train was approaching the crossing at a reasonable speed. Another reason for instructing on the train's speed is so that the jury could determine whether appellant failed to adequately warn motorists of an approaching train. Landers v. Atchison, T. & S.F. Ry. Co. (II), 73 N.M. 131, 386 P.2d 46 (1963).
 
 
 26
 Appellant next states the court erred in allowing the jury to determine whether the train whistle was blown long enough to give motorists adequate warning. Appellant suggests the only evidence relating to the train whistle's blast came from Mrs. Greenwood and her testimony is merely negative evidence that is entitled to no weight. We disagree. There is testimony from Crain that he too heard only a short blast; Mrs. Adams, in her deposition, testified the train did not blow its whistle until it was about a block from the crossing. Needless to say, there is sufficient evidence on the train whistle issue to send it to the jury. See Union Pac. Ry. Co. v. Burnham,124 F.2d 500 (10th Cir. 1941).
 
 
 27
 Appellant argues there was no dereliction of duty in not equipping the train with a movable headlight. Secondly, there was insufficient evidence supporting appellees' claim that engineer Butchofsky failed to keep a proper lookout and that brakeman Crump failed to give a warning. We believe there is sufficient evidence warranting a jury instruction on these two issues and thus will belabor the point no further.
 
 
 28
 With respect to keeping a proper lookout, appellant suggests the trial court should have given appellant's requested instruction concerning the right of the crew to assume Domingo would stop at the crossing. While this specific instruction was not given it is clear the subject was thoroughly covered in the trial court's foreseeability instruction and thus appellant suffered no prejudice.
 
 
 29
 Appellant alleges the court erred in submitting to the jury the issue of adequacy of warning devices at Canal Street crossing. It is appellant's contention that because New Mexico follows the stop, look and listen rule the railroad company is not negligent in failing to maintain automatic protection devices unless the crossing is more than ordinarily hazardous. 74 C.J.S. Railroads 727. Although New Mexico courts have not defined the standard of care of a railroad for placing warning devices at public highway crossings we can infer from Landers v. Atchison, T. & S.F. Ry. Co. (II), supra, that a railroad is expected to exercise the standard of care of a reasonably prudent person. Under this standard we can infer that New Mexico would require railroads to give reasonable and timely warning of approaching trains. And whether reasonable care and prudence require under all the circumstances of this case that special warning facilities be maintained at a crossing is a question of fact for the jury. See Union Pac. Ry. Co. v. Lumbert, 401 F.2d 699 (10th Cir. 1968); Chicago & N.W. Ry. Co. v. Golay,155 F.2d 842 (10th Cir. 1946). Appellant nevertheless argues the only evidence relating to inadequate warning devices comes from Baerwald, whose testimony was purely speculative. Baerwald testified that in his opinion the stop signs and crossbucks at Canal Street crossing were inadequate warning devices, that intermittent interruptions along Canal Street partially obstructed one's view of approaching trains and that a nonrevolving train headlight could easily be confused with lights along White Sands Boulevard. We do not believe Baerwald's testimony is so unrelated to the circumstances surrounding the accident as to be of no probative value. Whether Baerwald should have testified as an expert witness is a discretionary matter for the trial court. Landers v. Atchison, T. & S.F. Ry. Co. (I), 68 N.M. 130, 359 P.2d 522 (1961). And the weight to be given his testimony is for the jury rather than an appellate court. See Phelps Dodge Corp. v. Atchison, T. & S.F. Ry. Co., 400 F.2d 20 (10th Cir. 1968).
 
 
 30
 Appellant's final argument is directed toward third party defendant. Appellant contends the court erred in granting the City of Alamogordo's motion for a directed verdict because many of the hazardous conditions, such as dirt mounds, utility poles and vegetation along Canal Street were under the City's control. The general rule is, however, 'that in the absence of a statute a highway authority is not liable for personal injuries because it has allowed the view of an intersection to be obscured by high grass, weeds or bushes which have grown up in a portion of the street or along its boundary.' Hidalgo v. Cochise County, 13 Ariz.App. 27, 474 P.2d 34, 35 (1970). Nor do we believe the City was responsible for the signals at the railroad crossing; generally it is the railroad's duty to provide adequate warnings at its own crossings. See Missouri-Kansas-Texas Ry. Co. v. Hayes,445 P.2d 249 (Okla.1968). Without any statutory authority imposing a duty on the City to install and maintain railroad signs on crossings owned by the railroad, we do not believe the City is liable for the inadequate warning devices.
 
 
 
 [1]
 Honorable James R. Durfee, United States Court of Claims, sitting by designation