177 P.2d 168

**BUNTON v. HULL.**

No. 4968.

Supreme Court of New Mexico.

Feb. 6, 1947.

E. E. Young, of Roswell, for appellant.

James T. Jennings, of Roswell, for appellee.

LUJAN, Justice.

The appellant, as plaintiff below, brought this action to recover damages from defendant-appellee, for the death of his daughter, which resulted from an automobile collision occurring at the intersection of Highway No. 285 and the Country Club road, just beyond the limits of the town of Roswell. The appellant, prior to suit, qualified as administrator of the estate of his deceased daughter, Victoria Bunton, and sued in that capacity.

The case was tried to a jury, after being charged in a manner agreeable to both parties as evidenced by the absence of exceptions to the trial court's affirmative instructions, which returned a verdict in favor of the defendant. A motion to set aside the verdict and grant appellant a new trial was overruled, and it is from this order and the final judgment on the verdict that appellant appeals.

The first point relied upon by appellant for reversal is that the trial court erred in overruling his motion to grant him a new trial. The grounds upon which it was based were that the verdict was contrary to the law and the evidence, and the court's refusal to give his requested instructions Nos. 6 and 9.

The collision occurred at approximately 11:00 o'clock on the night of March 22, 1945, at the intersection of the two streets mentioned above. Donald Maurer, with whom the deceased was riding in the front seat, was driving a medium weight car, a 1936 Dodge sedan, while the appellee's truck was a very large and heavy vehicle. Highway No. 285 is a paved through highway which has a considerable number of residences built on each side of it as it approaches the city limits of Roswell. It carries a considerable volume of traffic and is intersected by the Country Club road at a point north and just beyond the city limits. The former extends north and south and the latter east and west. West of said highway and on the south side of the Country Club road was a "stop" sign to warn drivers of motor vehicles that they were approaching a through highway. At the point in dispute in this intersection, the appellee's truck struck the rear left door and fender of the passenger car considerably damaging the same and causing injuries to Victoria Bunton from which she died within a few minutes after the accident.

Section 68-521, Compilation 1941, reads as follows:

"Vehicles must stop at certain through highway.—The state highway commission with reference to all highways and local authorities with reference to highways under their jurisdictions are hereby authorized to designate main traveled or through highways by erecting at the entrances thereto from intersecting highways signs

notifying drivers of vehicles to come to a full stop before entering or crossing such designated highway, and whenever any such signs have been so erected it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto. All such signs shall be illuminated at night or so placed as to be illuminated by the headlights of any approaching vehicle or by street lights."

These precise and definite regulations were enacted for the protection of the traveling public; their purpose was to avoid collisions at through highway intersections by requiring all operators of motor vehicles, in obedience to a "stop" sign, to bring their automobiles to a full stop before entering or crossing such designated through highways, and to yield the right of way to other vehicles not so obliged to stop. Relative to this matter, Earl Othel Niceley, the driver of the truck, testified as follows:

"Q. How far was this car from you or from the side of the road when you first saw it? A. It was just almost on the pavement when I first saw it; it just came out from behind that building.

"Q. Did that car stop before entering the intersection? A. No, sir, it did not stop."

Eddie Reeves, who was riding on the right hand side in the front seat with the driver of the passenger car, also testified in regard to this matter as follows:

"Q. Did the driver of the car in which you were riding stop before entering the intersection? A. Not that I know of; I just remember him hitting the brake just as I saw the lights and just instantly before the truck hit us.

"Q. Did the car stop any place from the time you left Mr. McDaniels' house to the time of the impact? A. No sir, it did not."

In American Jur., Vol. 5, on collisions at intersections page 750, it is said:

" * * * The driver of an automobile on a main or primary road has a right to rely on stop signs at the junction of a street and such highway; he is not guilty of contributory negligence in assuming that a vehicle on the street will regard the stop sign and stop before entering the primary highway, and he cannot be charged with negligence in acting upon such assumption. * * *"

Upon the occasion in question, Earl Othel Niceley, driving alone in appellee's truck was proceeding in a southerly direction on Highway 285, while one Donald Maurer, driving and accompanied by Victoria Bunton, deceased, and Eddie Reeves, seated in the front seat, and Curley Lacy, Miss Tumbleson and L. D. Crocker, occupying the back seat, was proceeding in an easterly direction on the Country Club road. The appellee's truck, driven on a through highway, had the right to proceed

uninterruptedly in a lawful manner across the intersection, and it was the duty of the driver of the passenger car to come to a full stop in order to permit the truck to proceed across this intersection. In other words, it was the duty of the driver of the passenger car to yield the right of way to the truck and not to drive into the intersection so as to deprive him of his right to proceed uninterruptedly in a lawful manner in the direction in which he was moving.

■ The drivers of these two vehicles were presumed to know the law and their rights and obligations thereunder. The driver of the truck, driving on the through highway, had a right to assume that the driver of the passenger car, as he approached the through highway from an intersecting street, would obey the law by coming to a full stop thereby yielding the right of way. Lord v. Austin, Mo.App., 39 S.W.2d 575, 577; Shuck v. Keefe, 205 Iowa 365, 218 N.W. 31; Morris v. Bloomgren, 127 Ohio St. 147, 187 N.E. 2, 89 A.L.R. 831.

■ There was sufficient evidence to justify the jury in finding that the driver of the passenger car was negligent in failing to stop and to yield the right of way to the appellee's truck at this intersection, and that his negligence was the proximate cause of the collision.

■■ Appellant contends that appellee's truck violated the law of the road by failing to yield the right of way to the driver of the passenger car, as it was on the truck driver's right when it approached and entered this intersection. The pertinent part of the statute which appellant refers to reads as follows:

"(a) When two [2] vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right except as otherwise provided in section 19 [§ 68-519]. The driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder." 1941 Comp. Sec. 68-518.

This section applies only where a collision occurs at an intersection where neither road is a through highway, but does not so apply where the collision occurs at the intersection of a through highway and an intersecting "stop" street or highway.

■ It is further contended by appellant that the driver of the truck was also guilty of negligence in that he operated his vehicle at an unlawful and excessive rate of speed, and that by reason of such unlawful and excessive rate of speed the appellee forfeited his preferential right to proceed at said intersection. The right of the appellee to use the through highway un-

interruptedly is an absolute right qualified only by his duty to use it in a lawful manner. See Seekatz v. Sparks, 56 Ohio App. 397, 10 N.E.2d 1007; Keir v. Trager, 134 Kan. 505, 7 P.2d 49, 81 A.L.R. 181, 185.

Section 68-504 Compilation 1941 reads as follows:

"(b) Maximum Speed. The state highway commission may, by resolution, establish the maximum speed at which motor vehicles shall be permitted to operate upon the public highways, or upon any public highway or section thereof, and may from time to time change such maximum speed limits.

"Upon the establishment of such maximum speed limits, in the manner herein provided, such resolution shall take effect and be in force from and after the placing upon or along the highways, or any highway or section thereof, of such suitable signs as shall be provided by such resolution, designating such maximum speed limit for such highway or section thereof so posted.

"No truck shall be operated at a speed greater than the posted speed limit for any highway or section thereof, and no truck shall in any event be operated at a speed in excess of fifty [50] miles per hour."

The force of the collision was such that it either hurled the passenger car some thirty feet from the point of impact unto and against an electric light pole to the east of the highway or the driver of the passenger car lost control of his car after being hit by the truck which caused him to crash into the said pole.

Earl Othel Niceley testified as follows:

"Q. Were you near this intersection; just describe this whole thing, what happened as you came down there and everything you did? A. As I come into Roswell I usually slow up out at the 'Y' and check my speed there a lot. I was coming along in at approximately between thirty-five and forty miles an hour, and at the time I got to this intersection there was nothing in front of me at the time I got there, and all at once a car came out from behind the building there, and it looked as if it was going to East from West, and it shot out in front of me and I could not stop quick enough, and this car threw my tractor to the left into the tank, *and they went into the telephone post*, and when my tractor stopped it was almost straight." (Emphasis ours.)

Did the driver of appellee's truck proceed in a lawful manner? The driver of the truck who was the only eye witness, other than Eddie Reeves, an occupant in the passenger car, testified that he was traveling between 35 and 40 miles per hour at the time of the collision, and that he applied his brakes just as he hit the passenger car. In addition to this testimony other witnesses who arrived at the scene of the

accident shortly after it happened, testified from observations made as to signs and marks on the pavement, the location of the vehicles, the distance the truck stopped from the point of impact, and the condition of the vehicles. Likewise, pictures were taken of each vehicle and of the locus in quo, which were admitted in evidence. The jury resolved the question of speed in favor of the appellee. It was required to weigh all of the evidence in order to determine whether the appellee's truck was proceeding unlawfully at an excessive rate of speed and whether he was guilty of any negligence which was a proximate cause of the collision. On this issue, the jury by its verdict, found in favor of the appellee.

In view of the evidence in this case and the facts and circumstances surrounding the collision, we believe the jury was justified in absolving the appellee of any negligence in connection with the collision.

■ We have carefully examined the record, and while it may be that a conclusion might be reached from the physical facts in evidence differing from that reached by the jury, if it were within our province to draw such inference, but there being substantial evidence to support the verdict, it should not be disturbed. Snodgrass v. Turner Tourist Hotels, Inc., 45 N.M. 50, 109 P.2d 775; Chesher et al. v. Shafter Lake Clay Co., 45 N.M. 419, 115 P.2d 636; Roth v. Yara, 22 N.M. 361, 161 P. 1183; James v. Hood, 19 N.M. 234, 142 P. 162; Jenkins v. Maxwell Land Grant Co., 15 N.M. 281, 107 P. 739; Candelaria v. Miera, 13 N.M. 362, 84 P. 1021.

■ Although appellant in his motion for a new trial claims that the court erred in refusing to give his requested instructions Nos. 6 and 9, still, there is nothing in the record to show that he tendered them, and since no exception was taken to the giving of or the refusal to give any instruction, nor is any error assigned thereon, we must assume that the instructions given correctly stated the applicable law and all of it. Territory v. Gallegos et al., 17 N.M. 409, 130 P. 245; Territory v. Lobato, 17 N.M. 666, 134 P. 222, L.R.A. 1917A, 1226; Territory v. Leslie, 15 N.M. 240, 106 P. 378; Padilla v. Territory, 8 N. M. 562, 45 P. 1120.

Appellant's next contention is that the court erred in excluding the testimony of C. M. Hester as to the speed the truck was making at the time of the collision.

■ Whether an expert witness is qualified to give an opinion is a matter which is peculiarly within the discretion of the trial court, and unless that discretion has been abused this court will not disturb the ruling in refusing such testimony.

Appellant at the trial produced the above named witness who testified that he was

70 years old; that he was a farmer and the operator of a trailer and tourist camp in the outskirts of Roswell; that he had driven automobiles for 37 years; that he was not present at the scene of the accident nor did he hear the crash, but that he went there approximately seven hours after it happened; that upon his arrival at the scene of the accident he observed signs and marks on the pavement; that the passenger car was badly damaged and resting against an electric light pole about 25 feet from the point of impact; that prior to the accident he had had the opportunity of seeing an automobile hit a telephone pole and break it in half, also saw a truck hit another telephone post with the same result and that he judged both the car and truck must have been traveling about sixty miles an hour when they crashed into the respective poles. With this background it was sought by appellant to qualify the witness as an expert to testfy as to his opinion concerning the rate of speed the truck in question was traveling at or immediately preceding the collision at this intersection with the Dodge sedan.

▮ The fact that the witness had driven an automobile as stated by him in no way qualified him as an expert. The jury having before it all of the evidence, including photographic exhibits showing the condition of the car and truck as well as the scene of the locus in quo, it would seem anomalous to have the jury's province to find the facts determined by the opinion of some individual, who did not see the accident, and whose sole qualification appears to be that he had driven automobiles for some 37 years. The ultimate object of the inquiry on that point was the speed of the truck at and immediately preceding the collision. The foundation for expert testimony did not exist.

▮ It is laid down in a good many cases that, where a person has an opportunity to observe the movement of a vehicle, he may give an opinion as to its speed at the time; it not being a matter of expert testimony. The general rule is that a witness must testify as to matters within his own personal knowledge. Warren v. Hynes, 4 Wash.2d 128, 102 P.2d 691; Oyster v. Dye, 7 Wash.2d 674, 110 P.2d 863, 133 A. L.R. 720; State v. Carlsten, 17 Wash.2d 573, 136 P.2d 183; Allen v. Porter, 19 Wash.2d 503, 143 P.2d 328; Roscoe v. Metropolitan St. R. Co., 202 Mo. 576, 101 S.W. 32.

In State v. Barrett, 33 Or. 194, 54 P. 807, 808, the court used this language:

"As a general rule, a witness must testify to facts, and not conclusions or opinions. It is the duty of the jury, and not the witness, to draw inferences from the evidence, and form opinions from the facts presented. The cases in which the opinions of witnesses are allowed constitute exceptions to this rule, founded on the ground of necessity,

because the facts cannot be presented or depicted to the jury precisely as they appeared to the witness, and it is impracticable, from the nature of the subject, for him to relate the facts without supplementing their description with his conclusions. First National Bank of Portland v. Fire Ass'n of Philadelphia, 33 Or. 172, 50 P. 568, 53 P. 8. Such are questions as to the identity of persons or things; the age, health, physical condition, and appearance of a person; the lapse of time; the dimensions and quantities of things; and many other instances in which it is impossible to detail the facts without the use of language which necessarily implies the conclusion or opinion of the witness [citing authorities]. But the books all agree that such opinion evidence is never admissible if all the pertinent facts can be sufficiently described and detailed to the jury so as to enable it to draw its own inferences and conclusions."

Also see State v. Jennings, 48 Or. 483, 87 P. 524, 89 P. 421; Mott v. Detroit, etc., Ry. Co., 120 Mich. 127, 79 N.W. 3; Wright v. Crane, 142 Mich. 508, 106 N.W. 71; Williams v. Kansas City, etc., R. Co., 96 Mo. 275, 9 S.W. 573; and Campbell v. St. Louis & Suburban R. Co., 175 Mo. 161, 75 S. W. 86.

Our examination of the testimony satisfies us that the evidence as to the qualifications of the witness in question justified the trial court in its determination, and was not an abuse of discretion nor erroneous as a matter of law. So, therefore, we see no merit in this point.

Finding substantial evidence to sustain the verdict rendered by the jury, and finding no reversible error in the record, the judgment appealed from will be affirmed.

It is so ordered.

BICKLEY, C.J., and BRICE and SADLER, JJ., concur.

McGHEE, J., did not participate.