359 P.2d 522

James D. LANDERS, Plaintiff-Appellee,

v.

ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, M. C. Beene, J. L. Jones, J. L. Westover, W. M. Holder and H. A. Haragan, Defendants-Appellants,

Fireman's Fund Indemnity Company and State Automobile and Casualty Underwriters, Plaintiffs in Intervention.

No. 6734.

Supreme Court of New Mexico.

Feb. 14, 1961.

B. G. Johnson, Albuquerque, J. T. Paulantis, Albuquerque, R. G. Cooper, Albuquerque, for appellants.

Harris & Cathey, Roswell, Harvey Markley, Lovington, for plaintiff-appellee.

Brown & Brainerd, Roswell, Atwood & Malone, Roswell, for intervenors-appellees.

NOBLE, Justice.

This appeal results from a judgment based upon a jury verdict awarding appellee damages of $75,000 for personal injuries received in a collision between the truck operated by appellee and a railway engine of Atchison, T. & S. F. Ry. Co. The judgment was against the railway company and its employees who were operating the engine. Fireman's Fund Indemnity Co. and State Automobile and Casualty Underwriters appear as intervenors by reason of having paid benefits to appellee under the Workmen's Compensation Act, 1953 Comp. § 59–10–1 et seq., as an insurer of appellee's employer.

The collision occurred in Roswell, New Mexico, where the main line of appellants' railroad is crossed by McGaffey Street. The railroad tracks at this point run in a north and south direction and consist of the main line on the east side of the right-of-way and two side tracks. McGaffey Street runs east-west and is a two lane, paved street.

Appellee drove a semi-truck and trailer loaded with 58,000 pounds of sand and approached the crossing driving south on Atkinson Street, which is parallel to the railroad tracks, and turned right onto McGaffey Street. He stopped about 10 or 15 feet from the first track—the main line. The signal device which shows a flashing light and rings a bell when a train is ap-

proaching was not operating. The windows of the truck were rolled down. Appellee's vision was unobstructed except slightly by some signal boxes and a telephone pole to the south. After stopping, looking and listening and having neither heard nor seen a train, he put his truck into low gear and started slowly across the tracks at a speed of two to three miles per hour. He did not again look for an approaching train and first saw and heard the engine when the cab of his truck was astride the track. The truck was struck slightly behind the cab.

The engine was being used as a switch engine on the day of the accident and had no cars attached to it. The engine was backing at the time and proceeding at a speed of from 30 to 38 miles per hour. The engineer's seat, being on the left side of the cab, resulted in the operator, M. C. Beene, having no view to the east from which appellee was approaching. The engine was being operated by the fireman under the supervision of the engineer who was seated on the right side and could see to the east. Crew members having a view to the east saw appellee's truck approaching at a slow rate of speed. The engine brakes were applied almost simultaneously with the impact and it was brought to a stop some 600 feet up the track. There is no dispute as to the extent of the injuries received by appellee.

Appellants ground their first attack upon the denial of a motion for a directed verdict under the doctrine of Baltimore & Ohio Ry. Co. v. Goodman, 275 U.S. 66, 48 S.Ct. 24, 72 L.Ed. 167, 56 A.L.R. 645, or what is commonly called the "Pennsylvania Rule" which places an affirmative duty on one who crosses railroad tracks not only to "stop, look, and listen" but to continue vigilant to a point beyond peril or be regarded negligent as a matter of law. That doctrine was, in effect, applied in Morehead v. Atchison, T. & S. F. Ry. Co., 27 N.M. 349, 201 P. 1048, in an open crossing case. See also Atchison, T. & S. F. Ry. Co. v. Herbold, 10 Cir., 169 F.2d 12. However, in Russell v. Davis, 38 N.M. 533, 37 P.2d 536, we said, in a case involving a highway intersection accident, that the standard of conduct of one approaching an intersection is the same as that of one approaching a railroad crossing and is the care and conduct of a prudent person under the circumstances. That the appellee Landers did not see the engine by which his truck was struck until too late to avoid the accident is urged as proof that he failed in the exercise of this duty.

The decisions applying the "Pennsylvania Rule" are, for the most part, based upon accidents occurring at "open crossings" where no signal or warning device was used by the railroad company. A less stringent rule is applied by the majority of the decisions where signal or warn-

ing devices have been installed and maintained by the raiload company to warn the traveling public of the approach of trains. This rule is that where warning devices have been installed at a railroad crossing a traveler is not entirely relieved from his duty to look and listen for an approaching train, but, nevertheless, where such signal is silent, he may rely to some extent on the apparent safety implied from the silence of the signal, and such silence of the signal is a circumstance to be taken into consideration along with all other factors on the issue of contributory negligence. 99 A.L.R. 733.

In the case of a guarded crossing no precise rule can be stated as to the quantum of care required of the traveler in all cases or under all circumstances. The test is whether the traveler exercised that degree of care which a reasonable person would have exercised under the circumstances, and where the traveler exercised some care it is a question of fact for the jury to determine, not one of law for the court. Toschi v. Christian, 24 Cal.2d 354, 149 P.2d 848; Spendlove v. Pacific Electric Ry. Co., 30 Cal.2d 632, 184 P.2d 873; Ogburn v. Atchison, T. & S. F. Ry. Co., 110 Cal.App. 587, 294 P. 491; Annotation 99 A.L.R. 733 and cases collected. That the failure of a warning signal to operate lessens the imperative duty of the traveler to stop, look and listen and is even the practical equivalent

of an invitation to cross is recognized in Wabash Ry. Co. v. Walczak, 6 Cir., 49 F.2d 763.

Appellants foresaw the applicability of the above rules and earnestly contend that this case is not governed by the guarded crossing rule but comes within the strict "Pennsylvania Rule", it being urged that because appellee did stop, look, and listen before proceeding across the tracks, he did not rely on the warning device, and that the effect is, therefore, the same as if there had been no warning device.

The testimony was that appellee had crossed those tracks several times each day and was familiar with the crossing; knew of the signal or warning device; saw no warning light and heard no bell as he arrived at the crossing; that he looked in both directions and saw no approaching train nor did he hear any bell or whistle. He stopped about 15 feet short of the first track and then proceeded across at two to three miles per hour.

While there is no direct testimony of appellee that he did rely on the warning device, that "In looking he may have acted automatically from force of habit and looked less carefully because of reliance on the warning device.", was held in Spendlove v. Pacific Electric Ry. Co., supra [30 Cal.2d 632, 184 P.2d 875], to require submission of the issue to the jury. It was held that the court could not say as a matter of law that under such circum-

stances the traveler was contributorily negligent. The testimony of appellee that he was familiar with the signal device and that he heard no warning bell and saw no light warrants a reasonable inference that he relied to some extent on the warning device. Lindekugel v. Spokane, P. & S. Ry. Co., 149 Or. 634, 42 P.2d 907, 99 A.L.R. 721.

■■ In considering the motion for a directed verdict the court must view the evidence most favorable to appellee, including all reasonable inferences to be drawn from it and must disregard all unfavorable testimony and inferences. It is only where there is no fact for the jury to pass upon or where the court, in the exercise of its sound discretion, would be required to set aside a verdict if favorable to one side rather than to the other, that the court should direct a verdict. Ferris v. Thomas Drilling Co., 62 N.M. 283, 309 P.2d 225. We entertain no doubt that the record before us presents a factual question for the jury to determine as to whether appellee was contributorily negligent.

The witness J. D. Taylor, a Captain in the Air Force stationed at Walker Air Force Base near Roswell, was permitted to testify as an expert over the objection of appellants. His duties in the Air Force were in the field of engineering and safety and he had investigated and reconstructed some fifty-four automobile accidents. The Captain had no previous experience or training concerning accidents involving a railroad engine. The background for his testimony was acquired by some independent investigation in the way of measurements at the collision site and of the vehicles involved. In addition he had read the accident reports of the investigating officers and was propounded certain hypothetical questions based partly upon testimony of other witnesses, in part upon his own measurements and in part upon answers to interrogatories. To this information, and knowledge he had acquired from automobile accident manuals and safety schools, he applied mathematical calculations and laws of physics.

■ We have said that whether a witness is shown to be qualified to testify as an expert is a question largely within the discretion of the trial court, in the first instance, State v. Deming, 66 N.M. 175, 344 P.2d 481; Reid v. Brown, 56 N.M. 65, 240 P.2d 213; Bunton v. Hull, 51 N.M. 5, 177 P.2d 168, and that determination will not be disturbed by an appellate court unless the ruling is manifestly wrong or the trial court has applied wrong legal standards in the determination. Bratt v. Western Air Lines, 10 Cir., 155 F.2d 850, 166 A.L.R. 1061.

The answer to the first hypothetical question revealed that in the opinion of the witness the engine had been travelling 38 miles per hour immediately prior to

impact, and the answer to the second question that the engine was 353 feet from the crossing at the time the train crew first saw appellee 15 feet from the crossing. The final hypothetical question and answer were:

"Q. Captain, I am going to ask you another hypothetical question and I want you to assume the same speed of the train that was given in the last hypothetical question, assume the two to three miles an hour speed of the truck at the time it was seen fifteen feet back from the crossing, assume the distance of the track and assume that when the train crew first noticed the truck fifteen feet from the crossing that the switch engine was 353 feet from the crossing and I will ask you if the brakes on the switch engine had been applied as soon as possible, with those assumptions, do you have an opinion as to whether or not there would have been an accident?

\*    \*    \*    \*    \*    \*

"A.   There would not have been an accident."

■ A specific objection to the hypothetical question that brought forth the opinion as to the engine's speed was that it assumed that the tractor and trailer driven by appellee were thrown entirely through the air from the point of impact to their place of rest after the collision, and

it was said that there was no evidence of this fact. However, counsel assured the court that evidence on this point would be introduced and there was later evidence from which the fact could be inferred. Thus, under the rule announced in Sanchez v. Board of County Commissioners, 63 N.M. 85, 313 P.2d 1055, the question was permissible.

■ As to the final question, however, the witness on voir dire examination, in the absence of the jury, admitted that he did not know the period of time required for full application of air brakes on an engine after setting the brake lever at full emergency. At some times the witness testified that three-quarters of a second is normal reaction and perception time for the average automobile driver, including the time required for full application of the brakes. He, however, used a reaction and perception time of 1.2 seconds which he said was obtained from a manual published by Northwestern University applicable to automobile drivers, and that he did not know the reaction or perception time for the operator of a railroad engine.

The answer to the final hypothetical question, that if the emergency brake had been applied to the locomotive immediately when the engine was 353 feet from the crossing and appellee's truck 15 feet from the crossing, the accident would not have occurred was based upon the conclusion

of the witness that the forward progress of the engine would have been slowed to the extent that an additional 2.4 seconds would have been available to allow appellee's truck to have cleared the crossing.

Three erroneous factors, brought out on the voir dire examination, were used by the witness in arriving at the mathematical calculation upon which the answer was based. The factor of reaction time is shown by the following questions and answers:

"Q. All right. Let me ask you this, have you had any experience with railroad locomotives such as the one involved in this accident? A. No sir.

"Q. [Do] You know anything about the set up so far as the braking system, what time it takes for the air, even after your reaction time, say that the reaction time were identical to that on a car, of an individual, do you have any knowledge of the time that it takes after the emergency is applied for the air to escape one cylinder and for the actual air brake shoe to be applied on that train? A. I have no such knowledge.

"Q. And that would change your estimate here if it were not like a car and there was not an immediate application of the shoe on the wheel from the time you threw that throttle, would it not? A. Yes sir.

"Q. And that might be, as far as you know, some six or eight seconds that it takes this course to go through the air lines to the brake as far as you know on the engine? A. I have no knowledge at all.

"Q. This would considerably change that, would it not? A. Six to eight seconds would, sir.

"Q. Yes. Now as a matter of fact, those are things that you haven't considered in arriving at this computation that you have come up with on your answer, I assume that that information was not made available nor you didn't find out in your investigation, is that right? A. That is correct, sir."

The uncontradicted testimony, later introduced by appellants, was that from four to six and one-half seconds is required for full application of the brakes on a locomotive after the brake lever is placed on emergency stop. It is obvious that if the actual time for such brake application is four to six and one-half instead of 1.2 seconds assumed by the witness, there would not have been the 2.4 seconds additional time for the truck to clear the crossing.

Again, the voir dire examination brought out that the witness assumed that the truck did not stop at the point approximately 15 feet from the crossing but had continued

in motion. It was likewise assumed that the acceleration of the truck was constant as it proceeded across the tracks until it reached a speed of 6.9 miles per hour.

It is not disputed that appellee did come to a stop before crossing the tracks; that he was proceeding across at a speed of 2 to 3 miles per hour; and that when he saw the engine he tried to open the cab door and jump and being unable to do this dived into the cab. Even if the assumption of the reaction time for the engine and its operator had been correct, the truck could not have cleared the track if its speed was less than that assumed by the witness.

Thus factors of which the witness had no knowledge, or which were not based upon the evidence were taken into account by the witness in arriving at his answer. Since certain factors were admittedly used by the witness which were either erroneous or about which he had no accurate knowledge or information, we conclude that the trial court erred in permitting the witness to answer the last hypothetical question. Rideout v. Boston & M. R. R., 92 N.H. 340, 30 A.2d 488; Bunton v. Hull, supra; Bratt v. Western Air Lines, supra.

Having determined that the cause must be remanded for a new trial we might well not determine any other issues, but since it must be retried we think the question of the admission of testimony of the failure of the locomotive fireman, who was operating the engine under supervision of the engineer, to pass an examination for promotion to engineer a few months prior to the accident and his failure to pass the test again a few months after the accident and his subsequent discharge by the railway company should be commented on.

This testimony was adduced by appellee by calling the fireman as an adverse witness. Prior to ruling on admissibility of the evidence the trial court's attention was called to the fact that the tests were on mechanical aspects of the engine, and that even if his competence as an engineer was a relevant issue, this evidence had no bearing on his operation of the engine. There must be a causal relation between the failure to pass the examination and the injury complained of. See Lindsey v. Barton, 260 Ala. 419, 70 So.2d 633; Davis v. Gordon, 183 Md. 129, 36 A.2d 699, 156 A.L.R. 1109; New Orleans & N. E. R. Co. v. Miles, 197 Miss. 846, 20 So.2d 657.

Furthermore, the pleading of appellee established a framework for any evidence regarding the claimed negligence and that framework was limited to the operation of the engine immediately prior to and at the time of the accident. Negligence of the railroad company in permitting an incompetent person to operate the engine, even if Beene had been shown to be incompetent, was not an issue.

Appellee, while not admitting that the evidence was at variance with the pleading, argues that appellants' conduct in combatting the evidence after its admission, over objection, amounted to a trial of the issue by implied consent under Rules of Civil Procedure 15(b) or that it was a waiver of the objection.

The recognized cases of "implied consent" under Rule 15(b) are those where the evidence is introduced without objection, Luvaul v. Holmes, 63 N.M. 193, 315 P.2d 837, or when it is introduced by the party who would be in a position to complain of its irrelevancy, El Paso Electric Co. v. Surrency, 10 Cir., 169 F.2d 444. See 3 Moore's Federal Practice (2d Ed.) § 15.13. Where a party properly objects to the introduction of evidence as being irrelevant or collateral to the pleading he cannot be considered as having impliedly consented to trial of the issue under Rule 15(b). Neither can he be said to have waived his objection by combatting the objectionable evidence within the scope it was introduced. A party may attempt to lessen the prejudicial effect of evidence on the minds of the jury and his objection to it will subsist. Teter v. Spooner, 279 Ill. 39, 116 N.E. 673; Texas Employers' Ins. Ass'n v. Dillingham, Tex.Civ.App., 262 S.W.2d 748; Washington Tp. Farmers' Co-operative Fuel & Gaslight Co. v. McCormick, 19 Ind.App. 663, 49 N.E. 1085.

The admission of this collateral and irrelevant evidence created a material variance between the pleading and the proof, was not shown to have a causal connection, may have been prejudicial to appellants, and is reversible error. Giles v. Herzstein, 43 N.M. 518, 96 P.2d 289.

Holding, as we do, that the judgment must be reversed, other questions presented need not be determined on this appeal.

Finding error the cause will be remanded with instructions to set aside the verdict, vacate the judgment based thereon, and grant a new trial in accordance with the views expressed herein.

It is so ordered.

CARMODY and MOISE, JJ., concur.

COMPTON, C. J., and CHAVEZ, J., not participating.