458 P.2d 816

Craig Lee DAHL, Plaintiff-Appellee,

v.

Lorena Brown TURNER, Defendant-Appellant.

No. 317.

Court of Appeals of New Mexico.

Aug. 15, 1969.

Certiorari Denied Sept. 17, 1969.

J. T. Whorton, Shipley & Whorton, Alamogordo, for defendant-appellant.

R. Wilson Martin, and R. C. Garland, Garland, Martin & Martin, Las Cruces, for plaintiff-appellee.

## OPINION

WOOD, Judge.

The appeal in this automobile accident case raises issues concerning (a) testimony as to speed (two issues), (b) evidence of negligence and proximate cause, (c) violation of posted speed as negligence per se, (d) the good samaritan statute and (e) the applicability of our guest statute.

This was a three car accident on U. S. Highway No. 180 east of Silver City. The highway has two traffic lanes for eastbound traffic and two traffic lanes for westbound traffic. The east and westbound lanes are divided by a median except where the Fort Bayard road intersects the highway. The Goodyear pickup, traveling north on the Fort Bayard road, had crossed the two eastbound lanes and was turning left (westbound) when it collided with the car driven by Mrs. Turner. The Turner car was traveling west. After the collision with the Goodyear pickup it traveled onto the north shoulder and then, in a curving path, went south and west across the two westbound lanes, across the median, across a turning lane for eastbound traffic and collided with the Mester vehicle traveling east in the northerly of the two eastbound lanes.

Plaintiff, a passenger in the Turner car, sued Mrs. Turner, Goodyear and Mester. Summary judgment was entered in favor of Mester. The jury returned a verdict against Goodyear and Turner. Mrs. Turner appeals.

*Speed—the expert testimony of Dr. Zimmerman.*

Dr. Zimmerman gave his opinion that at a point 55 feet east of (and prior to) the collision between the Goodyear pickup and the Turner car, the Turner car was traveling at a speed in excess of 62 miles per hour. The posted speed in this area is 50 miles per hour. Mrs. Turner asserts the trial court erred in admitting this testimony. She presents four contentions as to the admissibility of Dr. Zimmerman's testimony.

First, Mrs. Turner relies on the Private Investigators Act; §§ 67–33–1 to 67–33–49, N.M.S.A.1953 (Repl.Vol. 10, pt. 1, Supp. 1967). This Act, among other things, provides for the licensing of private investigators. Section 67–33–9, supra, defines private investigator to include a person, other than an insurance adjustor, who " * * * makes an investigation for the purpose of obtaining information with reference to: * * * accidents or damage or injury to persons or properties; or securing evidence to be used before any court, * * *" Section 67–33–8, supra, provides that no person is to engage in a business regulated by the Act unless licensed under the Act.

Dr. Zimmerman was not licensed as a private investigator; he investigated the accident for the purpose of securing evidence to be used in court. Mrs. Turner claims he acted as a private investigator and not being licensed, he violated the Private Investigators Act. Because of this asserted violation. Mrs. Turner contends Dr. Zimmerman should not have been permitted to testify.

The Act provides no penalty for its violation and is silent as to whether testimony should be barred if the testimony pertains to information secured by a person violating the Act. We are not concerned with these matters in this case because Dr. Zimmerman did not violate the Private Investigators Act.

Section 67–33–10, supra, states that the Private Investigators Act does not apply to:

"E. A person engaged exclusively in a profession licensed by a board of this state."

Dr. Zimmerman was registered as a professional engineer under the Engineering Practice Act. See §§ 67–21–29 to 67–21–53, N.M.S.A.1953 (Repl.Vol. 10, pt. 1). Mrs. Turner asserts, however, that Dr. Zimmerman did not testify " * * * primarily as an engineer but as a traffic reconstruction expert. * * *" Whether the testimony was "as an engineer" or "as a traffic expert" is not the point. The point is whether in conducting his investigation and giving his opinion based on that investigation, Dr. Zimmerman was engaged exclusively in his engineering profession.

Dr. Zimmerman's testimony is that in analyzing the accident and arriving at his opinion as to the speed of the Turner car, he used recognized engineering and mathematical formulas; that these formulas were applicable to the movement of masses, including cars. In applying these formulas to this accident, Dr. Zimmerman was engaged exclusively in the practice of engineering. See definition of the practice of engineering, § 67–21–31(A), N.M.S.A. 1953, supra. Dr. Zimmerman was exempt from the Private Investigators Act.

Dr. Zimmerman conducted tests at the accident scene to determine the coefficient of friction. This coefficient was then used in arriving at his opinion as to speed. Mrs. Turner's second contention is that no similarity was established between the accident conditions and the tests performed by Dr. Zimmerman. On this basis, Mrs. Turner asserts the coefficient of friction determined by Dr. Zimmerman should not have been used and since this coefficient

was a factor in the opinion as to speed, the opinion as to speed should not have been admitted.

Dr. Zimmerman conducted his tests in June and July, 1968. The accident happened in June, 1967. The witness's testimony concerning the coefficient of friction should not have been admitted unless that determination was made under conditions substantially similar to the conditions existing at the time of the accident. See Alford v. Drum, 68 N.M. 298, 361 P.2d 451 (1961); Hodgkins v. Christopher, 58 N.M. 637, 274 P.2d 153 (1954). Accordingly, we review the objections made by Mrs. Turner concerning lack of such similarity.

Dr. Zimmerman conducted two sets of tests. The first set was run with a 1965 Pontiac. After the witness described the first set of tests, Mrs. Turner objected that there was no testimony about the surface of the roadway or the coefficient of friction in 1968 as compared to 1967. Plaintiff's counsel indicated he had not completed laying his foundation; the court made no ruling on this objection. After the witness testified that the road was dry when he ran his tests (photographs show the road was dry at the time of the accident) Mrs. Turner made a general objection (no grounds specified) which was overruled.

Mrs. Turner made several subsequent objections but never again claimed there was no showing of similarity between road conditions at the time of the tests and at the time of the accident. The court's rulings on the various objections and its comments concerning the testimony show that the trial court was not alerted to any claim concerning lack of similarity of road conditions. The trial court never ruled on this point.

■ We do not consider whether there is evidence showing similarity of road conditions at the time of the tests and at the time of the accident. No ruling of the trial court having been invoked on this issue, it is not before us for review. Barnett v. Cal M, Inc., 79 N.M. 553, 445 P.2d 974

(1968); State v. James, 76 N.M. 376, 415 P.2d 350 (1966).

As to the other objections concerning similarity of conditions:

(a) The tests were not run by a 1967 Plymouth Fury, this being the model of the Turner car. The witness testified that the coefficient of friction is independent of the type of car as long as the brakes are locked. Further, the second set of tests were conducted with a 1968 Plymouth Fury, " * * of the same weight and as far as we could tell the same characteristics of this other vehicle. * * * "

(b) There was no testimony at to calibrating the speedometer of the test cars with the speedometer of the Turner car. The witness testified that a difference in the speedometers would have affected his tests to determine the coefficient of friction. Realizing there would be some error, he took this into account by allowing for an eight percent variance and subtracting this percentage in arriving at the coefficient of friction.

■ (c) There was no testimony as to the distances involved in the tests in relation to the distances involved in the accident. This is true but we fail to see its pertinency. The witness conducted the tests to determine the coefficient of friction. He conducted these tests in the area where the Turner car left marks on the pavement as a result of braking action. He arrived at the coefficient by driving the test vehicles at known speeds, locking the wheels of the test vehicles and measuring the distance of the marks left on the pavement. He determined the coefficient by averaging these results. The fact that the marks left by the test vehicles were not compared with the marks left by the Turner car is not material to a determination of the coefficient of friction. The coefficient is determined by a formula applied to the factors of speed and skid distance.

Mrs. Turner's contention concerning lack of similarity between test and accident conditions is without merit.

After testifying as to the coefficient of friction, Dr. Zimmerman answered a hypothetical question concerning the speed of the Turner car prior to braking and leaving skid marks. Mrs. Turner's third contention is that the witness was not qualified to give any opinion as to speed. In support of this contention, Mrs. Turner claims he had no experience in reconstructing accidents; he made a series of assumptions in arriving at his opinion as to speed and there is no showing that he had the qualifications to make such assumptions. Mrs. Turner also asserts that the assumptions made by Dr. Zimmerman were improper.

■ The fact that the witness had no prior experience in reconstructing automobile accidents does not, in itself, disqualify him. " * * * While it must appear that the witnesses have acquired sufficient knowledge or experience to testify, no rule can be laid down as to the extent of such knowledge. * * *" Reid v. Brown, 56 N.M. 65, 240 P.2d 213 (1952). Dr. Zimmerman was an associate professor of Civil Engineering at New Mexico State University, holds various college degrees, had training in " * * * mechanics dealing with the motion or arrest of bodies and reaction forces.", and has taught and conducted research in this field. Further, he testified that his opinion was arrived at by the application of laws governing the motion or arrest of bodies to the facts in the case.

■ Whether he was qualified to express an opinion concerning the speed of the Turner car was within the court's discretion. See Alford v. Drum, supra; State v. Deming, 66 N.M. 175, 344 P.2d 481, 77 A.L.R.2d 964 (1959). The trial court's determination that a witness is qualified to testify as an expert will not be disturbed " * * * unless the ruling is manifestly wrong or the trial court has applied wrong legal standards in the determination. * * *" Landers v. Atchison, Topeka & Santa Fe Ry., 68 N.M. 130, 359 P.2d 522 (1961). On the record before us, allowing Dr. Zimmerman to testify as an expert was neither manifestly wrong nor an application of wrong legal standards.

In arriving at his opinion as to speed, Dr. Zimmerman began at the point where the Turner car came to rest after the collision with the Mester vehicle and worked backward through the events of the accident. In so doing, he relied on the plat prepared by the investigating State Police Officer (which was in evidence) concerning distances, tire marks, gouge marks and the path traveled by the Turner car. He also relied on the evidence of the State Police Officer concerning the angle of the impact of the Mester vehicle and Turner car. He relied on that which was shown by the photographs in evidence. He took into consideration the grade of the road and that in one portion of the path of the Turner car there was no braking action on the Turner car.

■■ Dr. Zimmerman also testified as to items assumed by him in arriving at his opinion. Examples: He made assumptions concerning the speed of the Mester vehicle at impact, and loss of velocity of the Turner car after crossing the median and leaving gouge marks in the pavement. In each instance, however, he explained why the assumption was made and the basis of the assumption. An expert witness must, of course, be able to give a satisfactory explanation as to how he arrives at his opinion. If his opinion is based on erroneous factors, it is subject to being stricken. See City of Albuquerque v. Chapman, 76 N.M. 162, 413 P.2d 204 (1966); Landers v. Atchison, Topeka & Santa Fe Ry., supra. Here there is no showing either that the evidence on which the witness relied, or the assumptions made in connection with that evidence was erroneous.

Mrs. Turner's fourth contention concerning Dr. Zimmerman's testimony is that in arriving at his opinion as to speed, the witness failed to consider "essential matters" which were in evidence.

Part of her objections under this argument concern items previously discussed under the argument concerning similarity of conditions. Other objections were that the witness failed to consider:

(a) Factors of speed change, direction and the specific measurements involved. The record shows the witness considered these factors.

(b) The weight factor (weight of car and people in the car). The record shows the witness did consider weight of the vehicles involved. Further, Dr. Zimmerman testified: " * * * The equation is not real sensitive to these weights and I can vary these by probably two or three hundred pounds and it won't affect these velocities by over a mile or so. * * *"

(c) Whether the coefficient of friction on the shoulder of the road was different from the coefficient determined to exist in the lanes of travel (the Turner car traveled onto the north shoulder of the road soon after the first collision). The record shows that Dr. Zimmerman, on the basis of the State Police Officer's testimony, assigned no braking action to the Turner car while on the shoulder. He assumed a constant velocity to the Turner car while on the shoulder. There is nothing in the record indicating this assumption was incorrect. Because he made certain assumptions in arriving at the speed of the Turner car, Dr. Zimmerman allowed for a margin of error as to the velocity.

(d) Whether the path of travel of the Turner car considered by the witness did in fact duplicate the actual path traveled after the first collision. The record shows Dr. Zimmerman considered the path of travel described by the State Policeman and evidenced by the photographs. The actual path of travel was the one considered.

There is no basis for the claim that Dr. Zimmerman, in arriving at his opinion as to speed, failed to consider "essential matters".

*Speed—the testimony of Goodyear.*

Goodyear did not see the Turner car prior to its collision with his pickup. Goodyear observed the Turner car from this collision until it collided with the Mester vehicle, a distance of two hundred forty-eight feet. The Turner car " * * * went in front of me a ways * * *", lost control, went into a sideways skid, crossed the divider and collided with the Mester vehicle. The Turner car didn't start slowing down " * * * until it got sideways, * * *"

Goodyear's opinion was that the speed of the Turner car, after the collision with his pickup, was between sixty-five and seventy miles per hour. Goodyear has been driving automobiles since he was old enough to be licensed to drive. We are not informed as to the length of time, nevertheless, the trial court observed Goodyear on the witness stand. We do know that Goodyear had his "little boy" with him in his pickup.

Bunton v. Hull, 51 N.M. 5, 177 P.2d 168 (1947) states: " * * * where a person has an opportunity to observe the movement of a vehicle, he may give an opinion as to its speed at the time; * * *" When the opinion is based on the observations of the witness, it is not expert testimony. State v. Deming, supra.

Mrs. Turner asserts neither Bunton v. Hull, supra, nor State v. Deming, supra, is applicable because in each case the non-expert opinion as to speed was based on observations made by the witness prior to the collision. Here, Goodyear's observation of the Turner car did not begin until the collision with his pickup. Since it was a post-collision observation, Mrs. Turner claims Goodyear's opinion was "irrelevant and immaterial" to the speed of the Turner car prior to the collision with his pickup. We disagree.

Goodyear's observation of the Turner car began after that car had left fifty-five feet of marks from braking action and collided with Goodyear's pickup.

Certainly, the speed of the Turner car immediately after these two events has some bearing upon—some pertinence to—the question of the Turner car's speed immediately before these two events occurred. What is involved here is the continuous movement of the Turner car from a point immediately prior to leaving skid marks until it came to rest after the second collision. Speed during one part of that continuous movement tends to prove the speed at a point immediately preceding that point. Without attempting a definition of the terms "irrelevant" and "immaterial", we hold that Goodyear's opinion as to the speed of the Turner car was both relevant and material to the issue of the speed of the Turner car immediately before the accident.

### Evidence of negligence and proximate cause.

Mrs. Turner asserts that her motion for a directed verdict should have been granted because, as a matter of law, there was no substantial evidence of any negligence on her part that was a proximate cause of the accident. In so contending, she emphasizes evidence from which the jury could determine that Goodyear's negligence caused the accident. We are not concerned with this evidence—Goodyear has not appealed from the verdict against him. What is the evidence as to Mrs. Turner?

There is evidence that Mrs. Turner was driving in excess of the speed limit and that she failed to control her speed to avoid colliding with the Goodyear pickup which was entering the highway. See § 64–18–1.1, N.M.S.A.1953 (Repl.Vol. 9, pt. 2. Supp.1967). This is evidence of negligence due to speed.

Mrs. Turner saw the Goodyear pickup several hundred yards before it reached the intersection. She did not see it again until it had entered the intersection and started its left turn. She made this second observation when she was only three to five car lengths from the pickup. She had right to assume that Goodyear would use due care in approaching the intersection.

See Monden v. Elms, 73 N.M. 256, 387 P.2d 458 (1963). Her right to make this assumption does not determine, as a matter of law, that she complied with her duty to keep a proper lookout for road hazards. See New Mexico U.J.I. 9.2. Rather, her right to the assumption is a factor to be considered in determining whether her lookout was proper. If she had looked, she would have seen that Goodyear did not use due care in entering the intersection when he did. The evidence as to the clear visibility in her approach to the intersection, and her speed in making that approach, raised a factual question as to whether she kept a proper lookout. There is evidence of negligence in failing to keep a proper lookout. Compare Monden v. Elms, supra.

As a matter of law can we say that if Mrs. Turner was negligent, such negligence was not a proximate cause of the accident? No. Proximate cause is a question of law only when the facts regarding causation are undisputed and the reasonable inferences from those facts are plain, consistent and uncontradictory. Chavira v. Carnahan, 77 N.M. 467, 423 P.2d 988 (1967). " * * * Proximate cause is an ultimate fact—usually an inference to be drawn from the facts proved. * * *" Flanary v. Transport Trucking Stop, 78 N.M. 797, 438 P.2d 637 (Ct.App.1968). Here, proximate cause cannot be determined as a matter of law because the facts concerning causation are disputed and because contradictory inferences could be drawn from those facts.

### Violation of posted speed as negligence per se.

Sections 64–18–1.1 and 64–18–2.1, N.M.S.A.1953 (Repl.Vol. 9, pt. 2, Supp. 1967) authorize the alteration of speed limits. The altered speed then becomes the speed limit. Section 64–18–2.1, supra. In this case the speed limit had been altered and notice of the alteration was given by posting. No claim is made that the alteration was made in violation of statutory provisions. The posted speed was fifty miles per hour. Violation of the fifty mile per

hour speed would be a violation of the statutory provision authorizing this limit to one's speed.

One who violates a statute is negligent as a matter of law, unless excused from such violation. See McKeough v. Ryan, 79 N.M. 520, 445 P.2d 585 (1968); New Mexico U.J.I. 11.1 and 11.2. There is no issue here concerning excuse from a statutory violation. Accordingly, a party violating the posted speed limit, violated the statute authorizing such speed limit and was negligent as a matter of law.

The trial court applied these principles. The effect of one of its instructions was to inform the jury that violation of the posted speed limit would be negligence as a matter of law. Mrs. Turner, in contending that this instruction was error, relies on § 64-18-7(B). This section reads:

"The provision of this act declaring prima facie speed limitations shall not be construed to relieve the plaintiff in any civil action from the burden of proving negligence on the part of the defendant as the proximate cause of an accident."

Mrs. Turner contends that under this statute, proof of violation of a posted speed is not negligence per se; rather, that a violation can be no more than evidence of negligence. We disagree.

Section 64-18-7(B), supra, indicates that in cases concerned with posted speed limits plaintiff must still meet his traditional burden of proof. It says that a case involving posted speed limits is not a special category just because posted speed limits are involved. Even if posted speed limits are involved, plaintiff must still prove negligence as a proximate cause of the accident.

Section 64-18-7(B), supra, however, does not state how negligence is to be proved. Proof of violation of a statute is one method of proving negligence. See Clay v. Texas-Arizona Motor Freight, Inc., 49 N.M. 157, 159 P.2d 317 (1945). Section 64-18-7(B), supra, does not provide that proof of violation of statutes concerning posted speed limits is not proof of negligence.

Once it was proved that Mrs. Turner violated the posted speed limits she was negligent as a matter of law because proof of the violation was proof of negligence on her part. Section 64-18-7(B), supra, does not change that rule.

*The good samaritan statute.*

Plaintiff had wrecked his own automobile. Mrs. Turner, among others came upon the accident scene. She helped plaintiff pick up his belongings from the highway and visited with plaintiff approximately fifteen minutes. Other than a cut on his arm which had bled plaintiff appeared " * * * perfectly normal and uninjured * * *" to Mrs. Turner. However, there is evidence that plaintiff wasn't aware that " * * * he had rolled his car * * *" and didn't seem to know where he had been or where he was going. Plaintiff didn't want to go to a doctor, but did want to be taken to a friend at a motel in Silver City. There was a discussion between Mrs. Turner and another witness about giving plaintiff a ride. The result was that Mrs. Turner agreed to give plaintiff a ride to Silver City since that was her destination anyway. While traveling to Silver City, Mrs. Turner " * * * was kind of worried about him [plaintiff] because he had never ridden with me and I was scared he would be scared to ride with me. * * *" Enroute to Silver City, Mrs. Turner's accident occurred.

Mrs. Turner claims the above evidence raised a factual question under our "good samaritan statute" which is §§ 12-12-3 and 12-12-4, N.M.S.A.1953 (Repl.Vol. 3). She asserts the trial court erred in failing to submit the issue to the jury.

The pertinent part of § 12-12-3, supra, reads:

"No person who shall administer emergency care in good faith at or near the scene of an emergency, as defined herein, shall be held liable for any civil damages as a result of any action or

omission by such person in administering said care, except for gross negligence; * * *"

Section 12–12–4, supra, defines emergency to mean:

"* * * an unexpected occurrence involving injury or illness to persons, including motor vehicle accidents and collisions, disasters, and other accidents and events of similar nature occurring in public or private places."

Section 12–12–3, supra, refers to "emergency care" and the "scene of an emergency as defined herein." The wording of the definition of emergency in § 12–12–4, supra, indicates that definition applies only to the second use of the word "emergency". The meaning of "emergency" in the term "emergency care" is not defined.

The only "care" which Mrs. Turner can be said to have administered to plaintiff was the providing of transportation. Assuming, but not deciding, that in providing a ride to town, she was providing "care", was it "emergency care"?

"Emergency" has been defined as unforeseen circumstances or the resultant state that calls for immediate action. Webster's Third New International Dictionary. It has been defined as a sudden or unexpected occasion for action; a pressing necessity. Black's Law Dictionary (4th ed. 1951). See also, Good Samaritan Legislation: An Analysis and a Proposal, 38 Temple Law Quarterly 418 n. 41 at 424 (1964–65).

If Mrs. Turner was administering "care" in providing transportation to plaintiff, such care was not emergency care within the meaning of the statute. There are no facts indicating a pressing necessity for such transportation; no facts indicating that the transportation was immediately called for.

After plaintiff wrecked his car he had a cut on his arm and appeared in a confused state. In such a situation, the State Police Officer would have tried to get plaintiff to go to the hospital but wouldn't have forced him to go. Plaintiff didn't want to go to a doctor. Plaintiff wanted to be taken to a friend at a motel in Silver City. That's what Mrs. Turner was doing. She was doing this because she was going that way.

Under the facts of this case, Mrs. Turner was not providing emergency care. What additional facts would be needed to present a jury question under § 12–12–3, supra, we do not decide. See the article in the Temple Law Quarterly, supra, at 424–427 & n. 50, at 427. The trial court did not err in refusing to submit a "good samaritan" issue to the jury.

*Applicability of our guest statute.*

Since plaintiff was a non-paying passenger in the Turner car, Mrs. Turner contends she should not be liable to plaintiff on the basis of ordinary negligence. She claims the "guest statute" applies. Section 64–24–1, N.M.S.A.1953 (Repl.Vol. 9. pt. 2).

Gallegos v. Wallace, 74 N.M. 760, 398 P.2d 982 (1964) determined that § 64–24–1, supra, was unconstitutional insofar as that statute included a non-owner driver. "* * * A non-owner operator is not included within the statute, and is liable for ordinary negligence." Lewis v. Knott, 75 N.M. 422, 405 P.2d 662 (1965). See Cortez v. Martinez, 79 N.M. 506, 445 P.2d 383 (1968); Romero v. Tilton, 78 N.M. 696, 437 P.2d 157 (Ct.App.1967).

Mrs. Turner was not the owner of the car she was operating. She contends, however, that she should have the benefit of our guest statute because she was using the car within the scope of her employment for her father. Her father owned the car.

The claim is that an employee of the owner, operating the owner's car within the scope of employment, succeeds to the protection the guest statute affords to the owner. The guest statute applies only to owners. It does not apply to non-owners. Lewis v. Knott, supra; Gallegos v. Wallace, supra. Lopez v. Barreras, 77 N.M. 52, 419 P.2d 251 (1966) held the provisions of the guest statute do not apply to an operator who is the agent of the owner

under the family purpose doctrine. See Cortez v. Martinez, supra. The reasoning of Lopez v. Barreras, supra, and Gallegos v. Wallace, supra, applies to the situation here. The provisions of the guest statute do not apply to an operator who is the employee of the owner and who is operating the owner's car in the scope of employment. The trial court did not err in refusing to instruct the jury concerning § 64–24–1, supra.

The judgment is affirmed.

It is so ordered.

SPIESS, C. J., and HENDLEY, J., concur.