648 P.2d 8

Darlene TURNER, Individually and as Next Friend for Robert S. Turner, a Minor, Plaintiff-Appellee,

v.

NEW MEXICO STATE HIGHWAY DEPARTMENT, Employer, and Fireman's Fund Insurance, Insurer, Defendants-Appellants.

No. 5452.

Court of Appeals of New Mexico.

June 8, 1982.

Certiorari Denied July 8, 1982.

William F. Brainerd, Roswell, for defendants-appellants.

David F. Richards, Garrett & Richards, Clovis, for plaintiff-appellee.

## OPINION

LOPEZ, Judge.

The defendants appeal a judgment in a workmen's compensation case awarding death benefits to the widow. We affirm.

The defendants present two issues for reversal: 1. admissibility of medical expert testimony; 2. whether the workman's death arose out of and in the course of his employment.

FACTS

Decedent was employed by the New Mexico Highway Department as an equipment operator. He had been suffering from high blood pressure for over a year before his death, but was able to continue working. He was under medication for his heart condition. On July 7, the day of his death, he went to work as usual. His duties included operating road equipment and doing actual physical labor on the highway, and servicing equipment. July 7th was "equipment service day" and decedent first changed the oil and an oil distributor and then changed

the fuel filters on another piece of equipment. He took a break, drank some cold pop, and then returned to grease the front end of a blade. This work was being done out in the sun, in about 85° weather. After about three minutes working with the grease gun, decedent collapsed having suffered a fatal heart attack.

1. *Admissibility of medical expert testimony.*

The defendant contends that the trial court improperly admitted the testimony of Dr. Dorothy Lee concerning causal connection between the decedent's employment and his fatal heart attack. The defendants denied that the workman's death was caused by his employment. Therefore, it was incumbent upon the widow to comply with § 52–1–28(B), N.M.S.A.1978 of the Workmen's Compensation Act relating to compensable claims which requires:

> In all cases where the defendants deny that an alleged disability is a natural and direct result of the accident, the workman must establish that causal connection as a medical probability by expert medical testimony. No award of compensation shall be based on speculation or on expert testimony that as a medical *possibility* the causal connection exists. (Emphasis added.)

The plaintiff called Dr. Lee as an expert witness to testify as to causation. The foundation testimony to qualify Dr. Lee as an expert showed that she is a medical doctor with a specialty in pathology. She estimated that she has performed one thousand to three thousand post mortems in her career. She has had experience conducting autopsies on patients with heart problems, including physical laborers. Dr. Lee was involved to a minor degree in the autopsy of the decedent. She reviewed some of the materials for the doctor who performed the autopsy and suggested some of the language that went into the autopsy report.

The defendants objected to allowing Dr. Lee to give an expert opinion on causation, claiming that she was qualified as an expert in pathology but not cardiology, so that any testimony in the area of cardiology would be non-expert. After the initial objection, the foundation for Dr. Lee's opinion was expanded by her testimony that, as a pathologist, it was within the area of her expertise to study and know the effects of different factors on the heart. The judge admitted her expert opinion over the continued objection of the defendants. It was Dr. Lee's opinion that the autopsy indicated that decedent was obese, had hypertensive cardiovascular disease and thickened and calcified arteries. That physical condition, combined with the heat of the day and the exertion of working caused the decedent to go into fatal arrythmia. She stated as a medical probability that the working conditions and the work decedent performed on the day of his death were the precipitating cause of the fatal arrythmia.

Defendants objected to the admission of the following: 1. that Dr. Lee is not a cardiologist; and 2. that her training and experience were within pathology; and 3. that she had done no research or read any papers relative to her testimony. The defendants appear to rely on *Anderson v. Mackey*, 93 N.M. 40, 596 P.2d 253 (1979), for their contention that plaintiff's expert should have been a cardiologist and not a pathologist. In *Anderson* the question before the Supreme Court was "whether there was direct testimony that, as a medical probability, plaintiff's psychological disability was a natural and direct result of the accident." In *Anderson*, at trial, the medical expert testified:

Q. And what is that disability, Doctor?
A. I think she has a psychological disability.
Q. And what is that psychological disability?
A. Well, I am not properly—not properly trained—I am not trained in psychological diagnosis or psychology to put a name on it exactly, but it is some type of hysteria or conversion reaction.

At the close of the plaintiff's case, the trial judge dismissed the plaintiff's complaint, because she failed to show a causal connection between her accident and her disability as a medical probability. The trial judge stated:

[the expert] acknowledges that she does have pain and that she does have a psychological disability, and so far as I can find the record is totally silent as to even a fair inference from his testimony, that he's saying that there is a causal connection. In fact, I think he just expresses no opinion as to the cause of the psychological disability.

The Supreme Court held that the doctor was not qualified to state an opinion based upon a medical probability, because the expert failed to state a causal connection, and because "the doctor stated he was not trained in psychological diagnosis or psychology." We do not interpret this holding to require in every case the expert testimony of a specialist in the area of injury of disability. The doctor in *Anderson* stated that he was not qualified to testify as to psychological diagnosis, whereas in the present case, Dr. Lee demonstrated that she was qualified to testify as to the cause of the decedent's heart attack.

In *Frederick v. Younger Van Lines*, 74 N.M. 320, 393 P.2d 438 (1964), the New Mexico Supreme Court held that it was error to strike the testimony of a general practitioner regarding a claim for loss of vision. The defendants in that case contended that only a specialist in the field of ophthalmology would be qualified to provide opinion evidence. Even the assertion by the doctor that he made "no pretentions to be qualified to testify as to diseases and troubles of the eye otherwise than a general practitioner would" did not make his testimony and opinion inadmissible. The Supreme Court said:

[t]hat he was not a specialist does not go to the admissibility of the evidence elicited from him nor to its sufficiency to support a finding based thereon, but rather to the weight to be accorded it.

The *Frederick* decision cited the case of *Williams v. Skousen Construction Company*, 73 N.M. 271, 387 P.2d 590 (1963). In that case a general practitioner testified regarding a myocardial infarction, and stated his opinion that the strenuous labor and exertion associated with the employment caused an increased load upon the heart, which in turn precipitated the heart attack. The Court held that the general practitioner was a qualified medical expert and that the conflict between his opinion concerning causation and that of the specialist was for the trier of facts to resolve.

■ The defendants contend that *Anderson* modifies or overrules *Frederick* and the *Williams* cases. We disagree. *Frederick* and *Williams* are applicable to the case at bar. Section 52–1–28(B) does not limit expert testimony on causation to a specialist in the area of injury. The plaintiff in this case was not required to establish causation only through the expert testimony of a cardiologist. Dr. Lee was qualified as a medical expert to testify as to her opinion concerning the causal connection between the working conditions and the workman's fatal heart attack.

The defendants quote the following testimony by Dr. Lee to support their argument that she was not qualified to give an expert opinion on causation:

Q. What effect does the medication he was on for hypertension have on his heart rate?

A. That, I don't know.

Q. Could it increase it?

A. Probably not. That is certainly not an area of my expertise.

Q. So you don't know the effect of the medication that he was on?

A. No.

This testimony does not go the admissibility but rather to the credibility of the testimony of Dr. Lee. It is the trial court's function, upon evaluation of all the testimony, to determine the weight to be attributed to her testimony and to resolve any conflicts between her opinion and that of any other medical expert.

The trial court properly admitted the testimony of Dr. Lee. *See State Farm Fire & Casualty Co. v. Miller Metal Co.*, 83 N.M.

516, 494 P.2d 178 (Ct.App.1971); *Dahl v. Turner*, 80 N.M. 564, 458 P.2d 816 (Ct.App. 1969).

· 2. *Whether the workman's death arose out of and in the course of his employment.*

■ The trial court entered 14 findings of fact and 3 conclusions of law. The defendants have challenged only findings Nos. 9 & 10 and Conclusions 2 & 3 which read as follows:

Findings:

No. 9. On July 7, 1978, Plaintiff decedent, Robert W. Turner sustained a compensible accidental injury arising out of and in the course of his employment with the defendant, New Mexico Highway Department.

No. 10. The work performed by the decedent and the working conditions which existed on July 7, 1978, were the probable and precipitating cause of the cardiac arrythmia.

Conclusions:

No. 2. That Plaintiff decedent, Robert W. Turner, sustained a cardiac arrhythmia which resulted in his death on July 7, 1978, and that said injury arose out of and was in the course of his employment with the Defendant, New Mexico Highway Department.

No. 3. That Plaintiff Darlene Turner is entitled to Workmen's Compensation benefits in accordance with Section 52–1–46 of the New Mexico Statutes Annotated as follows: Darlene Turner is entitled to benefits of $83.25 per week from July 7, 1978, and continuing thereafter for a period not to exceed 600 weeks from said date; Darlene Turner as next friend for Robert S. Turner, a minor, is entitled to benefits of $40.08 per week from July 7, 1978, and continuing thereafter for a period not to exceed 600 weeks from said date.

The unchallenged findings are the facts before this court. The question of whether an accidental injury or death arises out of or in the course of employment is a matter of law to be decided by the court based upon the facts. *Edens v. New Mexico Health and Social Services Dept.*, 89 N.M. 60, 547 P.2d 65 (1976).

■ On appeal this court in reviewing workmen's compensation cases considers only evidence and inferences that may be reasonably drawn therefrom in the light most favorable to support the findings of the trial court and does not weigh conflicting evidence or the credibility of the witnesses. *Gammon v. Ebasco Corporation*, 74 N.M. 789, 399 P.2d 279 (1965); *Lopez v. Phelps Dodge Corporation*, 83 N.M. 799, 498 P.2d 686 (Ct.App.1972). The historical facts as to how the fatal accident occurred are not in dispute. The only criteria of dispute appears to be in the medical testimony between Dr. Lee and Dr. Clark who testified for the defendants. Dr. Lee testified that there was causal connection between the accidental incident, death of the decedent, and his employment. Dr. Clark's critical answer was that his opinion was as follows: "my opinion is that the best medical knowledge is that we don't know why the heart attack occurred when it occurred." It was up to the trial court as a trier of fact to determine the credibility of and resolve the conflicts between the two expert witnesses. We have already ruled that Dr. Lee was qualified to testify in this case. Dr. Lee's testimony shows substantial evidence to support the trial court's findings. *Martinez v. Universal Constructors, Inc.*, 83 N.M. 283, 491 P.2d 171 (Ct.App.1971). In *Cardenas v. United Nuclear Homestake Part.*, 97 N.M. 46, 636 P.2d 317 (Ct.App.1981) the Court of Appeals said:

Although the opinions of the expert medical witnesses were conflicting, and the evidence cited by plaintiff could have supported a different conclusion by the trial court, it is not a prerogative of this court on appeal to weigh the testimony of medical experts, but rather to ascertain whether there is substantial evidence to support the trial court's evaluation of the evidence and determination of where the

truth lies * * *. Findings are to receive such construction as will uphold rather than defeat a judgment, and, if from the facts found the other necessary facts to support the judgment may be reasonably inferred, it will not be disturbed on appeal * * *. (citations omitted).

It is our conclusion that the record shows there is substantial evidence to support the findings of the court and the findings support all the conclusions.

The judgment of the trial court is affirmed. The plaintiff is allowed $2,000 for appellate attorneys fees.

IT IS SO ORDERED.

DONNELLY and NEAL, JJ., concur.